BEATRICE ANTHONY, Respondent, *v.* SYRACUSE UNIVERSITY, Appellant.*

Fourth Department, November 14, 1928.

* Revg. 130 Misc. 249.

488

*Frank H. Hiscock* [*John H. Bachman* of counsel], for the appellant.

*Joseph B. Murphy*, for the respondent.

SEARS, J.   The defendant is an educational corporation incorporated under a special act of the Legislature of the State of New York, and conducts various departments for the higher education of men and women at Syracuse, N. Y.   It is exempt from taxation. It is subject to visitation by the Board of Regents.

The plaintiff from September 15, 1923, to October 6, 1926, was a student in the department of Domestic Science or Home Economics of the defendant.   This department is not shown to receive any financial aid from the State.   On the day last mentioned she was dismissed from the defendant's institution by the officers without the assignment of any adequate cause for such action. She was simply advised that the authorities of the defendant had heard rumors about her; that they had talked with several girls " in the house," that is, in the house of the Greek letter society

of which she was a member, and found she had done nothing lately but that they had learned that she had caused a lot of trouble in the house; and that they did not think her " a typical Syracuse girl."

In September, 1923, when the plaintiff was first received as a student at the university, she signed a registration card, which contained these words: " I agree in honor to comply with the regulations and requirements of Syracuse University and to cooperate with the University authorities and my fellow students in maintaining high standards of conduct and scholarship and in promoting the general welfare of the University. It is understood that I accept registration as a student in Syracuse University subject to the rule as to continuance therein found on page 47 of the University Catalogue." The regulation referred to in the registration card as to continuance at the university, printed on page 47 of the University catalogue, was as follows: " Attendance at the University is a privilege and not a right. In order to safeguard its scholarship and its moral atmosphere, the University reserves the right to request the withdrawal of any student whose presence is deemed detrimental. Specific charges may or may not accompany a request for withdrawal."

In September, 1924, and again in September, 1925, she signed similar registration cards. The regulation quoted above was slightly amended before the 1924 registration card was signed, and as printed in the catalogue and referred to in the registration cards of 1924 and 1925, it was as follows: " Attendance at the University is a privilege and not a right. In order to safeguard those ideals of scholarship and that moral atmosphere which are in the very purpose of its founding and maintenance, the University reserves the right and the student concedes to the University the right to require the withdrawal of any student at any time for any reason deemed sufficient to it, and no reason for requiring such withdrawal need by given."

The plaintiff does not allege in the complaint that her dismissal was malicious, but simply that it was arbitrary and unjust, and founds her action upon a contract which she claims to have existed between herself and the university for her continued attendance. In substance she seeks a specific performance of this contract. The defendant on the other hand relies on what it claims to be one of the terms of the contract, namely, that the plaintiff's continuance as a student at the university was strictly at the pleasure of that institution. No question is raised by the defendant as to the form of the action, or the right of the plaintiff to the judgment she obtained, if she is entitled to any judgment whatever.

Under ordinary circumstances and conditions a person matricu-

lating at a university establishes a contractual relationship under which, upon compliance with all reasonable regulations as to scholastic standing, attendance, deportment, payment of tuition and otherwise, he is entitled to pursue his selected course to completion, and receive the degree or certificate awarded for the successful completion of such course. (*Goldstein* v. *New York Univ.*, 76 App. Div. 80, 82; *People ex rel. Cecil* v. *Bellevue Hospital Medical College*, 128 N. Y. 621, affg. 60 Hun, 107; *Baltimore Univ.* v. *Colton*, 98 Md. 623.) The defendant, for the purpose of this litigation, concedes such to be the law. It rests its case upon the claim that an express contract between the parties takes this case out of the general rule stated, and that, under such express contract, a right to dismiss the plaintiff at any time for any cause whatever was granted to the defendant.

The regulation in force in 1923 assented to by plaintiff's signature to the registration card did, doubtless, as claimed by the defendant, modify the ordinary rule, and this regulation continued to be a part of the contract between the parties throughout the term of the plaintiff's attendance at the university except as it was modified in 1924. By signing the later registration cards, the plaintiff assented to the modification. Plaintiff argues that the regulation is not binding upon her, *first*, because at no time did she read the catalogue or have actual knowledge of the regulation printed in it; and, *second*, because the regulation is contrary to public policy. It is also suggested that it is not binding on her because she was an infant at the time all registration cards were signed. In my judgment none of these arguments is sound. *First*, contracts must be enforced as they are written. The learned court at Special Term correctly stated in his opinion: " The fact that the plaintiff had no actual knowledge of the existence of this rule would not alter the situation, assuming that the rule of constructive knowledge be under the circumstances applicable." The rule of constructive knowledge was applicable. (*Germania Fire Ins. Co.* v. *Memphis & C. R. R. Co.*, 72 N. Y. 90; *Phillip* v. *Gallant*, 62 id. 256.) *Second*, the argument on public policy is based upon the theory that consent to such a regulation as was here printed in the catalogue amounts to a permission given the university authorities to do an act which would necessarily injure the reputation of the student. Such injury to reputation, however, if it occurred would be merely incidental. As both parties argue, the relation between plaintiff and defendant was wholly contractual. It was voluntary in its inception on both sides. A student is not required to enter the university and may, in fact, after entry withdraw without reason at any time. The university need not accept as a student one

desiring to become such. It may, therefore, limit the effect of such acceptance by express agreement and thus retain the position of contractual freedom in which it stood before the student's course was entered upon. I can discover no reason why a student may not agree to grant to the institution an optional right to terminate the relations between them. The contract between an institution and a student does not differ in this respect from contracts of employment. (*Barker* v. *Bryn Mawr College,* 278 Penn. St. 121; *Stetson Univ.* v. *Hunt,* 88 Fla. 510; 102 So. 637; *People ex rel. Kelsey* v. *N. Y. Post-Grad. Med. School & Hosp.,* 29 App. Div. 244.) *Third,* infancy is not material. The plaintiff relies upon a contract made when she was an infant. She cannot recover except upon the contract. The only contract existing between the plaintiff and defendant embodied the regulation permitting the defendant to terminate the contractual relationship. If she repudiates her contract because of her infancy, she then becomes a stranger to the university. She cannot repudiate part and not repudiate all.

The construction of the regulation may be material. The regulation in my judgment does not reserve to the defendant an absolute right to dismiss the plaintiff for any cause whatever. Its right to dismiss is limited,. for the regulation must be read as a whole. The university may only dismiss a student for reasons falling within two classes, one, in connection with safeguarding the university's ideals of scholarship, and the other in connection with safeguarding the university's moral atmosphere. When dismissing a student, no reason for dismissing need be given. The university must, however, have a reason and that reason must fall within one of the two classes mentioned above. Of course the university authorities have wide discretion in determining what situation does and what does not fall within the classes mentioned and the courts would be slow indeed in disturbing any decision of the university authorities in this respect.

When the plaintiff comes into court and alleges a breach of contract, the burden rests upon her to establish such breach. She must show that her dismissal was not for a reason within the terms of the regulation. The record here is meager on this subject. While no adequate reason was assigned by the university authorities for the dismissal, I find nothing in the record on which to base a finding that no such reason existed. She offered no testimony either as to her character and relation with her college associates or as to her scholarship and attention to her academic duties. The evidence discloses no reason for her dismissal not falling within the terms of the regulation. It follows, therefore, that the action fails.

The judgment should be reversed on the law and the facts, with

costs, and judgment granted to the defendant dismissing the complaint, with costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings of fact made.

All concur, TAYLOR, J., in result on the ground that the special contract gave defendant an absolute and unlimited right to remove plaintiff from the university at any time, the recitals in the contract being merely a statement of the motives prompting defendant to reserve its right to dismiss at its option. Present — HUBBS, P. J., CLARK, SEARS, CROUCH and TAYLOR, JJ.

Judgment reversed on the law and facts, with costs, and complaint dismissed, with costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.