John SMITH, President of Student Government Ass'n et al.

v.

Buford ELLINGTON, Chairman, Board of Trustees, University of Tennessee, et al.

Civ. A. No. 7224.

United States District Court, E. D. Tennessee, N. D.

April 19, 1971.

E. Michael Ellis, *Child & O'Connor,* Knoxville, Tenn., for plaintiffs.

Arthur B. Stowers, Staff Atty., Knoxville, Tenn., Thomas E. Fox, Deputy Atty. Gen., State of Tennessee, Nashville, Tenn., John C. Baugh, Gen. Counsel and Secretary, James E. Drinnon, Jr., Asst. Gen. Counsel and Asst. Secretary, Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Plaintiff students, some of whom are officers of student organizations of the University of Tennessee at Knoxville, seek a declaratory judgment and injunction against defendants, the Governor of Tennessee, and the President and the Chancellor of the University of Tennessee.

At the June 18, 1970 meeting of the Board of Trustees of the University, an

approved resolution provided in pertinent part that the University campuses and facilities shall be restricted to students, faculty, staff, guests and invitees, except on occasions when all of the campuses and buildings are open to the public. Each chancellor was directed to submit prior to September 1, 1970 rules and regulations implementing the resolution and facilities for which he is responsible. In compliance with the Board's directions, rules for the Knoxville campus were approved and became effective on September 1, 1970.[1]

The Court is called upon to determine whether the regulations violate plaintiffs' First and Fourteenth Amendment rights of freedom of association; also, if the regulations are constitutionally overbroad.

General guidelines for implementation of policies were also formulated.[2] The

1. 1. All University personnel (students, faculty, administration, and staff) shall provide acceptable identification (I.D. card, fee receipt, etc.) when requested to do so by Safety and Security officers or by other University officials. University personnel who refuse to give acceptable identification shall be subject to appropriate University action.

2. Invitees, visitors, and guests to The University of Tennessee, Knoxville campus shall provide identification and/or qualification if requested to do so by Safety and Security officers or other University officials. Persons who are unable or unwilling to give acceptable identification and/or qualification shall be requested to leave the campus and, if they refuse, shall be subject to lawful removal and prosecution, including but not limited to the injunctive process.

3. On occasions when public events are held on campus, e. g. intercollegiate athletics contests, concerts, lectures, etc., the University shall be considered open to all persons desirous of attending such events.

4. Guests—visitors and invitees shall honor while on campus University rules and regulations concerning the use of and conduct in University facilities/grounds. Violation of rules and regulations may result in lawful removal from campus, prosecution, and withdrawal of visitation privileges.

*Definition of Terms*

For interpretation of these policy statements the following definitions are applicable:

*Student.* A person who is registered for a credit course or courses or who is enrolled in a course or program for which no credit is given (correspondence study excluded).

*Faculty Member.* A University employee whose job classification is "academic."

*Administrator.* A University employee whose job classification is "administrative professional" or "administrative."

*Staff Member.* A University employee whose job classification is "clerical and supporting."

*Invitee.* A person who has official business at the University, e. g., delivery man, construction worker, patient, client, student's parents or guardians, etc.

*Visitor-Guest.* A person invited by a University student or employee to visit the campus at a specific time, place and occasion. A person making repeated use of University facilities and/or grounds shall not be considered a guest.

2. 1. Campus streets and adjoining sidewalks maintained by the City of Knoxville shall not be deemed University grounds for purpose of these policy statements.

2. Signs bearing the following message, "Use of This Facility Restricted To Students, University Employees and Guests," shall be placed at the entrances to all facilities used primarily for student for student activities.

3. Persons in charge of the University Center and the Aquatic Center shall make in cooperation with the Office of Safety and Security periodic identification checks of persons using these facilities.

4. Campus service and recreational facilities shall be restricted to use by University personnel and bona fide guests-visitors and invitees. Persons in charge of these facilities shall make periodic checks for identification or qualification.

5. Generally, programs and activities of student organizations and groups shall be restricted to members, guests-visitors, and University personnel. Student organizations and groups desiring to have programs and activities open to the public shall have such events approved in advance by the Director of Student Activities.

6. The Dean of Students or other authorized University official shall require, if deemed advisable, acceptable identification for admission to University events and

policy of implementation which included the rules and guidelines were approved by the Board of Trustees.

Considerable turmoil existed on the Knoxville campus at and prior to the formulation of the regulations. A riot had occurred in front of the Administration Building on January 15, 1970. A number of non-students participated in the riot, some of whom were convicted of criminal offenses in the Criminal Court at Knoxville for inciting a riot. In May, 1970, a non-student was a part of a crowd which interrupted a meeting for high school students that was being held in the University Center. The meeting was cancelled due to the trouble. Non-students participated in a number of incidents on the Knoxville campus involving criminal acts. The facilities of the University, especially the University Center, became crowded, partly due to use by non-students. The enrollment of the University has increased to approximately 21,000 and due to the crowded condition of the campus it is anticipated that enrollment will be cut off when it reaches around 28,500 students. The crowded conditions in some of the buildings on the Knoxville campus was one of the factors that prompted the regulations that are the subject of this controversy.

A system of spot checking was instituted by asking for identification on a random basis of all those who appeared on the campus and if any individual was unable to identify himself as a student, faculty or staff member, or to qualify as an invitee or guest, he was asked to leave the campus. In the event he refuses, appropriate legal action can be taken to have him removed. Legal action was taken against Peter Kami and Foy McDavid, both non-students who on different occasions were asked to leave the campus when they could not produce identification or qualification.

President Boling stated that the purpose of the regulations was to keep the University of Tennessee an educational institution and to prevent it from being pushed too far by various groups. The policy is different for each campus of the University. Last spring large numbers of non-students visited the Knoxville campus. The Student Center was so crowded at times that it was not easy "to get around in." Non-students continue to use the Knoxville campus under certain restrictions. Before these rules were promulgated, non-students by loitering had interfered with the orderly operation of the Student Center. The Trustees have proclaimed through this policy that the University is for the students, faculty, administrators and other employees of the University.

Chancellor Weaver prepared the regulations which were referred to in his testimony as an implementation of the policy. The purpose is to control the campus. Enforcement is by checks made by the University personnel in charge of the various facilities, and if any trouble arises the matter is referred to the security personnel. Instructors enforce the policy in their classrooms. The Student Center is the only place where checks have been made for non-students. There are about 1500 faculty members on the Knoxville campus and 4,000 or 5,000 employees.

Howard Aldmon, Vice Chancellor of Student Affairs, implemented the policy by developing guidelines. In making checks for identification, the checkers usually accept the word of the student. Penalty for a violation is to request the individual to leave the campus.

Phil Scheurer is the Director of Student Activities on the Knoxville campus. He testified that students have guests on the campus and that the students have been made knowledgeable of the regulations. Spot checks are required of

programs not open to the public. Implements of this requirement shall be accomplished in cooperation with the sponsoring University organization or group.

7. Written reports of identification checks and incidents germane to these policies shall be submitted to the Dean of Students or his designee.

student organization meetings. Non-students participated in the student strike protesting the Kent State College violence in 1970. The strike interfered with school operations. He narrated how non-students played a prominent role in disrupting one University meeting when a general of the Army was to speak.

■ Plaintiffs claim that there is no need for the regulations. We do not agree. A University campus is primarily for the students, faculty and administrators and when visitation on the campus of non-students interferes with normal activities of the school, the officials of the school not only have the right to intercede, but it is their duty. Reasonable regulations of campus activities by University officials is constitutionally permissible. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

Plaintiffs' claim that the regulations have been unconstitutionally applied is not sustained by the evidence.

■ The chief complaint is that the regulations deprive the students of the University the right of freedom of association. This complaint is based largely on the proposition that non-students are not at liberty to come upon the campus except during public functions without invitation and when they come they may be checked for identification. This causes embarrassment, say the students, because they never know when their invitee may be checked. The restriction does not deprive the students of association with their friends on the campus, unless their friends object to coming upon the campus because they may be checked.

The chance of a visitor being called upon for identification may incidentally restrict in some small degree freedom of association, but the University has a vital interest in the operation of the campus for educational purposes and this justifies the regulation both from a constitutional and educational standpoint.

Sellers v. Regents of the University of California, 432 F.2d 493 (1970); Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968).

■ Plaintiffs further contend that the regulations are vague and overbroad. This vagueness results in vesting administrative officials with too great a discretion. In support of their overbroad theory, they insist that the restrictions do not accomplish their purpose in that they are intended to eliminate violence on the campus; that under the restrictions a student may invite a friend who may commit violence on the campus. This is a matter that may require consideration of the Trustees and the University officials, but is not sufficient to require Court intervention.

■ Plaintiffs also contend that the regulations are vague. The language appears to be sufficiently clear to be understood by the ordinary person, particularly a University student. See Sellers v. Regents of University of California, supra. Moreover, if the student is uncertain as to the meaning, the administrators of the University are available for clarification.

■ We are not dealing with a criminal statute which requires clear language so that men of common intelligence will not have to guess at its meaning. Cf. Boyce Motor Lines v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367 (1952).

■ The officials of the University have inherent general power to maintain order and to enforce reasonable rules of student conduct. Norton v. Discipline Committee of East Tennessee State University, 419 F.2d 195 (C.A. 6, 1969); Goldberg v. Regents of the University of California, 248 Cal.App.2d 867, 57 Cal. Rptr. 463.

■ The complaints of the students that the regulations involve censorship and are uncertain, unnecessary and unduly restrict their association are more

imaginary than real. Regulations that regulate the time, place and manner of the use of the campus facilities are considered reasonable. Accordingly, the prayer for declaratory and injunctive relief must be denied.

In view of the decision reached, we deem it unnecessary to pass on the question of whether the complaint and proof presents a justiciable issue. See Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696, 1971.