Frederick B. Bryant, J.
This proceeding is brought pursuant to article 78 of the CPLR. The petitioner asks for judgment annulling a determination of the officials of the respondent, Cornell University, imposing a so-called “ transfer tuition fee ” on the petitioner as a condition of his transfer from the School of Industrial and Labor Relations to the College of Arts and Sciences within the respondent university. In substance, the petitioner challenges the legality of the respondent’s policy of charging “ transfer tuition ” to a student who transfers from a New York State supported school administered by the respondent to a privately endowed college within the same university.
The respondent has moved to dismiss the petition for failure to state a cause of action and for an order vacating the temporary restraining order granted by this court at the inception of the proceeding.
The pertinent facts are fully set forth in the papers submitted on behalf of and in opposition to the motion and admit of little, if any, dispute. After three semesters as a student in the State supported School of Industrial and Labor Relations (I. and L. R.) administered by Cornell University pursuant to section 5715 of the Education Law, the petitioner applied for and was accepted for transfer to Cornell’s privately supported College of Arts and Sciences. He received credit for the courses he had taken successfully while at I. and L. R. and paid the bill submitted for tuition for the academic year ahead. In due course petitioner received a bill for “transfer tuition” — a charge representing the difference between the cost to the petitioner for the courses completed at I. and L. R. and for which he received credit in the college and what the cost would have been had the petitioner been a student at the endowed college from the start. It is payment of this transfer tuition which the petitioner seeks to avoid.
*1086 The petitioner alleges that the respondent’s policy of charging such transfer tuition is illegal in that it was never adopted by the respondent’s trustees, was not adopted after consultation with the Trustees" of the University of the State of New York (SUNY), and is discriminatory in.that it applies only to transfers within and between the schools administered by Cornell and not to transfers from without the university to the respondent’s endowed colleges or schools.
This court admits to serious difficulty in understanding the purpose of the transfer tuition charge. The respondent professes that its principal concern is that a candidate for a degree in its privately endowed college should bear all the costs of his education equally with all those who are admitted to such endowed college. This concern might be valid if it in any way benefited Cornell University as a payment towards the cost of petitioner’s education. But the respondent asserts that the transfér tuition received from each student is turned over to the State of New York by way of credits on the bill submitted from time to time to the State for “ accessory ” instruction, that is, instruction given in the endowed colleges to students enrolled in the State supported schools. The position of the university is made more difficult to understand by the apparent lack of any requirement on the part of the State of New York that such transfer tuition be charged and credited. Neither of the parties has referred the court to any such requirement and the court has been unable to find such requirement by independent investigation. The result seems to this court to be that credits earned by the petitioner and others in a similar situation in a school supported by the taxpayers of the State to further the State’s policy of extending educational opportunity as widely as possible (see, e.g., ‘ Opportunity for Higher Education ’ ’ Education Law, art. 130) are usable for transfer purposes within Cornell Uniyer-sity only upon payment of a premium which, in effect, destroys the low tuition privilege originally extended. If the State were itself insisting on such payment and return of the moneys to the State treasury it might well be said that they were taking back the low-cost education which they had previously provided. Since the collection and payment of the transfer tuition fee. seems to be a unilateral policy of Cornell University the only apparent reason for it is to equate the recipient of low-tuition education with the more affluent student in the endowed college.
But the court is not being called upon to search for or justify the reasons which have impelled Cornell University to adopt the policy now being challenged. The question is whether they may pursue such policy and whether the petitioner is bound by it.
*1087 The respondent challenges the propriety of petitioner’s course of action in bringing this proceeding under article 78 of the CPLR on the facts here presented. Article 78 does not apply where the party has an adequate .remedy at law. No good reason has been shown to explain why the petitioner could not have paid the disputed transfer charge under protest or other safeguard and later sued for recovery of what he claims was illegally demanded. The court does, however, have some discretion in these matters and in the exercise of that discretion chooses to consider the petition on its merits. In so doing the court concludes that the petitioner has failed to demonstrate a clear legal right to the relief sought.
The petitioner’s allegation that the respondent’s trustees have not adopted a policy of requiring a transfer tuition charge is completely negated by the respondent and not established. Respondent has shown that the trustees adopted such policy at least as early as the year 1903. The respondent stresses that this policy applies to all transfers within Cornell and not just to State supported schools. Examination of respondent’s fee schedule, however, indicates that only transferors from the State supported schools incur extra charges.
Nor does the petitioner’s allegation that the policy was not legally adopted because there was no prior consultation with the trustees of SUNY have validity. Such consultation is required by section 5715 (subd. 6, par. b) of the Education Law with reference to tuition charged students at I. and L. R. The transfer tuition charge with which we are concerned in this case is charged only when a student has left the State supported school and has entered one of the endowed colleges. It could never have been charged while he was a student at I. and L. R. Thus prior consultation with SUNY trustees was not required.
The petitioner’s allegations that the respondent’s policy is discriminatory as to him and other transferors from the State supported colleges at Cornell to the endowed colleges is true to a certain extent. But such allegations do not set forth sufficient grounds for adjudging the policy of charging transfer tuition illegal. For the respondent to avoid the suggestion of discrimination and still require payment of transfer tuition fees it must necessarily concern itself with the fees paid by transferring students to the school from which he transfers, whether a State supported school or a private school. Presumably, if the fees so charged were less than those charged by Cornell the transferor would be required to pay the difference. This would create a chaotic and unrealistic situation. The respondent’s policy with *1088 reference to transfer tuition is confined to transfers from one school or division within the university to another. All of such schools are under the over-all administration of the Cornell trustees and are subject to the same policy. Indeed, the requirements for transfer from colleges outside the univeresity are entirely different, follow different procedures and are set forth in detail in a special bulletin governing such outside transfers. Instead of being discriminatory, it appears to this court that the respondent is properly concerned only with the enforcement of its policy as to intra-college transfers within these areas under its control
The court sees no valid basis for the petitioner’s allegation that the respondent’s policy violates subdivision 2 of section 224 of the Education Law.
In substance, the petitioner’s rights in this case are governed by ordinary principles of contract law. The relationship between a university and its students is one of contract. (Matter of Carr v. St. John’s Univ., 17 A D 2d 632, affd. 12 N Y 2d 802.) From his first contact with Cornell as a prospective student in the I. and L. R. school the petitioner was aware, constructively at least, of the policy of which he now complains. It is set forth at page 71 in the “ General Information Bulletin ”, for the academic year 1970-71, available to all Cornell students.
This was the year petitioner matriculated at Cornell. The policy is stated even more emphatically in the ‘ ‘ General Information Bulletin ” for 1971-72 at pages 30 and 69. When the petitioner was negotiating with Cornell officials in January, 1972, for his transfer he was reminded of the policy. There is little question, therefore, that the petitioner was fully warned of the financial liability he would necessarily incur on transfer. When he pursued his objective in the face of the information given in the bulletins and the express notification given in January, 1972, he must be deemed to have accepted the terms upon which his transfer was to be effected.
The petitioner appears to concede that he would be bound as set forth above were it not his contention that the respondent’s policy is illegal and hence could not be the basis of a valid contract. The court, however, has found no legal reasons or precedents which support the petitioner’s contentions. In fact, the case law in this State indicates the contrary and gives wide discretion to college and university trustees in setting policies concerning their students. (See Carr v. St. John’s Univ., 17 A D gd 632, affd. 12 N Y 2d 802, supra; People ex rel. Goldenkoff v. *1089 Albany Law School, 198 App. Div. 460; and Anthony v. Syracuse Univ., 224 App. Div. 487.)
The court’s attention has been called to the unreported decision of Justice Bookstein in Graham v. University of State of N. Y. That case involved payment of retroactive tuition fees by a student when transferring from a tuition free program in the State University to one in which tuition is charged by the State. The court refused to intervene on the student’s behalf. The decision is in line with the State University’s requirements as shown in 8 NYCRR 302.6. While the decision and regulation mentioned are not precedents controlling here, they do indicate that the State University is not averse to the principle of exacting transfer tuition fees in appropriate cases.
There is nothing inherently illegal in the setting by a private, or even a public, institution of higher learning of conditions upon which it will accept a candidate for a degree. Even if the stipulation made as a condition is regarded as unreasonable or oppressive, the contract made by the parties must govern in the absence of fraud or mistake. (See 10 N. Y. Jur., Contracts, § 150.)
The petition is, therefore, dismissed and the restraining order is vacated.
The respondent’s application for an award of attorney’s fees as part of the damages sustained because of the issuance of the restraining order is denied. The restraining order has not damaged the respondent. It was issued, not as an injunction per se, but to preserve the status quo pending determination of the issues raised in this proceeding for review. Under these circumstances the court does not deem it proper to penalize the petitioner by awarding attorneys’ fees to the respondent.