470 A.2d 526

**COMMONWEALTH of Pennsylvania**

v.

**Michael J. DOWNING, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 6, 1983.

Filed Dec. 2, 1983.

Reargument En Banc Denied Feb. 13, 1984.

Petition for Allowance of Appeal Granted May 24, 1984.

154

Michael J. Downing, in propria persona.

Michael L. Turner, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, CAVANAUGH and JOHNSON, JJ.

JOHNSON; Judge:

Appellant was found guilty of defiant trespass [1] and acquitted of disorderly conduct [2] in the Philadelphia Municipal Court as a result of an incident at the Temple University Law Library. He appealed his trespass conviction to the common pleas court and, following a trial *de novo,* was again convicted of defiant trespass. After denial of post-trial motions, Appellant was sentenced to one year probation. This appeal followed.

Viewing the evidence in the light most favorable to the Commonwealth, *Commonwealth v. Parker,* 494 Pa. 196, 431 A.2d 216 (1981), the record indicates that Appellant, who was not affiliated with the University, had periodically used the law library, located in the Klein Building, in preparation of various lawsuits to which he was a party. He had obtained a general pass from the law school to use the library during its normal hours of operation.

On December 10, 1980, Appellant approached the Klein Building and encountered the following posted notice:

> In order to accommodate law students studying and sitting for the final exams, the Klein Building will have restricted access from December 4th to December 23rd.
>
> Admittance will be limited to faculty, staff and students of the School of Law and persons presenting written authorization from the Director of Administration, Eugene R. Lyons, or Law School Counsel, H. Patrick Swygert.
>
> Thank you in advance for your cooperation.

Appellant proceeded to Professor Swygert's office, also located in the Klein Building,[3] and stated to Swygert that he wanted to see the Dean. Swygert informed Appellant that the Dean was unavailable and asked what he could do to assist Appellant. Appellant told Swygert that he wanted to

1. 18 Pa.C.S.A. § 3503(b).

2. *Id.* § 5503.

3. The main floor of the law library is located on the third floor and Professor Swygert's office on the eighth floor of the Klein Building.

use the law library and that he had a pass to use the library. Swygert then told Appellant that his pass was suspended during the examination period and that he could return after that period to use the library. Swygert handed Appellant a copy of the posted notice. Appellant then told Swygert that he needed to use the books in the library and would return at a later date to use them. Swygert told Appellant he could not use the law library during the restricted examination period. Appellant then left the Klein Building peaceably. Swygert prepared a memorandum, dated December 10, 1980, to the University security office stating that Appellant was not to be admitted to the building.

On December 19, 1980, Appellant returned to Swygert's office on the eighth floor of the Klein Building and demanded that he be allowed to use the library, because it was his right. Swygert asked Appellant to leave and Appellant stated that he would not leave the building unless arrested or physically removed. Appellant was again asked to leave and upon his refusal, campus security was contacted. During this encounter outside Swygert's office, Appellant was shouting at those present and at one point told Swygert to "go to hell". The security officer, upon his arrival at Swygert's office, spoke with Appellant, requesting that he leave. Appellant again refused. He was then arrested, escorted off the University premises, and released. Appellant immediately returned to the law library where he was arrested at the check-out desk of the library and charges of defiant trespass and disorderly conduct filed.

Professor Swygert testified at trial that he refused Appellant access to the law library for his failure to maintain the proper "decorum", based on the two confrontations.

Appellant raises three issues on appeal: (1) did the trial court err in failing to grant Appellant's demurrer and was the evidence insufficient, (2) was Appellant's conviction for defiant trespass barred by 18 Pa.C.S.A. § 110(2) because of his prior acquittal of the disorderly conduct charge, and (3)

did Appellant have a legal right and/or license to use the law library.

Appellant's first argument alleges that the trial court erred in failing to grant his demurrer and that the evidence was insufficient to support Appellant's conviction for defiant trespass. We note initially that the issue of the correctness of the ruling on a demurrer is not an appropriate appellate issue where the defendant did not rest following the adverse ruling, but instead chose to present evidence in his defense. *Commonwealth v. McNeal*, 493 Pa. 395, 426 A.2d 606 (1981). However, when there is an improper challenge to the trial court's ruling on the demurrer, this court may treat the question as if properly framed, namely, whether the trial court erred in refusing Appellant's motion in arrest of judgment—whether the evidence was sufficient in law to support the conviction. *Commonwealth v. Ilgenfritz*, 466 Pa. 345, 353 A.2d 387 (1976).

The defiant trespass statute, 18 Pa.C.S.A. § 3503(b) states:

**(b) Defiant trespasser.—**

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

(i) actual communication to the actor; or

(ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; or

(iii) fencing or other enclosure manifestly designed to exclude intruders.

Section 3503(c)(2) sets forth:

**(c) Defenses.—**It is a defense to prosecution under this section that:

. . . . .

(2) the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises;

. . . . .

The facts as set forth *supra* clearly indicate that Appellant· entered the law library after notice against trespass had been given both by actual communication and by posted notice. However, in light of the affirmative defense provided by section (c)(2) of the trespass statute, we conclude that, based on the particular facts of the instant case, this conviction must be reversed.

Appellant's position throughout these proceedings has been that the law library was legally required to be open to the public[4] and that he complied with all lawful conditions imposed on access. We agree.

Our review of the record convinces us that prior to the restricted examination period, the law library was open to members of the public. Professor Swygert testified that the Klein Building was generally open to *law students* at any time. As for persons not affiliated with the University, the evidence presented discloses that Appellant had obtained various general passes to use the law library and had in fact used the library facilities on numerous occasions prior to the incident.

In any event, the Commonwealth argues that the law library was *not* open to the public *at the time of the incident,* due to the examination period restrictions. However, both the posted notice and Professor Swygert's testimony reveal that although access during the examination period was *restricted,* there was no absolute *bar* to gaining access, as means of obtaining permission to use the law library were available. Specifically, Swygert testified that during the restricted examination period, certain categories of persons might be given permission:

4. Appellant raises the undisputed fact that the law library was a member of the Federal Depository Library system. *See* 44 U.S.C.S. § 1901 et seq. He argues that because of its membership in this system, the library was required to be open to the general public. See 44 U.S.C.S. § 1911 ("Depository libraries shall make Government publications available for the free use of the general public ...."). However, because of our determination in this case, we need not now evaluate the impact or effect of the library's membership, as it relates to whether the library was required to be open to the public.

In a given case we might permit a law student at a neighboring law school to use the facility, assuming the materials were not available at that student's school; and I would suppose that we would permit a person who didn't fit any of the above categories to use the law school, assuming that the individual presented himself or herself and indicated a need for the materials.

N.T. 9/18/81 p. 68.

■ Professor Swygert testified that a person not affiliated with the University could obtain permission to use the law library during the restricted examination period if certain conditions were met. That person was required to (1) present himself or herself, (2) demonstrate a need for access to the law library and (3) demonstrate an ability to maintain the proper "decorum".

We therefore hold that the law library was open to the public as set forth in 18 Pa.C.S.A. § 3503(c)(2), subject to any member of the public desiring access being able to comply with the conditions as set forth.

■ We next address the question of whether Appellant complied with all lawful conditions placed on access to the law library. The record reveals that the purpose of the restrictions on access during the examination period was to screen outsiders seeking access to the law library in order to avoid overcrowding and to maintain an atmosphere in the law library conducive to examination preparation. While we need not decide the issue of the lawfulness of those restrictions at this time, such restrictions must be both reasonable and nondiscriminatory and may not be based simply upon an undifferentiated fear or apprehension of disturbance.[5] *Commonwealth v. Tate*, 495 Pa. 158, 174 n. 14, 432 A.2d 1382, 1390 n. 14 (1981).

---

**5.** It is well-settled that a college or university has the right to adopt and enforce reasonable, nondiscriminatory rules and regulations governing utilization of its facilities, although the control exercised by administration officials must conform to the Constitution and such conformity dictates equal application of reasonable and unambiguous regulations. *Wood v. Davison*, 351 F.Supp. 543 (N.D.Ga.1972). *See also Sill v. Pennsylvania State University*, 318 F.Supp. 608 (M.D.Pa.

The record demonstrates that conditions (2) and (3), as set forth *supra,* were unwritten and afforded Swygert a measure of discretion in his determination. We must therefore determine whether Swygert abused that discretion when he refused to grant Appellant permission to use the law library.

The record discloses that, on December 10th, Appellant presented himself to Swygert at Swygert's office and communicated his need and desire to use the law library. Professor Swygert testified:

Well, on December 10th, 1980 again in the afternoon, there was some noise outside my office. I got up from my desk. I went outside. I don't believe my secretary was on duty at the time.

I went outside, Mr. Downing was there, and asked me—I asked Mr. Downing what I could do for him, and he stated that he wanted to see the Dean of the law school. I said to Mr. Downing at the time that the Dean was not available, the Dean was either off campus or in class, but I believe he was off campus; and that in his absence I was responsible for the law school. "What could I do for you?" And he said he wanted to use the law library and wanted to use some of the facilities of the library.

I told him that we were in the midst of exams. He told me he had a pass, which was issued by the former Director of Administration. I told him that that pass, like all other passes issued by the former Director of Administration, were all suspended during examination time; that after the examination period he could return to the building.

1970), *aff'd* 462 F.2d 463 (3rd Cir.1972). Also, college officials possess authority and have a duty to make and enforce reasonable rules applicable to students, faculty and campus invitees alike to ensure maintenance of order and decorum within the educational system. *Stacy v. Williams,* 306 F.Supp. 963 (N.D.Miss.1969), *aff'd* 446 F.2d 1366 (5th Cir.1971). *See also Smith v. Ellington,* 334 F.Supp. 90 (E.D.Tenn.1971).

He told me that he had a need to use the books; that he would use the books; and that he would go back to the library and use the books. I told him that I am sorry but we can't do this, we are, again, in the middle of our examinations period and that would he please calm down and understand that he could come at some later point.

Q. Did you tell him what the period we are talking about was?

A. Oh, yes, the examinations period was approximately December 4th to December 24th, or Christmas Eve, and I indicated to him that after the examinations period, from December 24th thereafter, he was free to return to the building.

.     .'     .     .     .

Q. Did you personally make known on the 10th of December the contents of that notice to Mr. Downing?

A. The first time Mr. Downing came to my office on the 10th of December I gave him a copy of this notice.

Q. You handed it to him?

A. Yes, I reminded him of this policy. This was at the time he gave—Mr. Downing presented to me a building pass. I indicated to him that the pass, one, had been signed by Mr. Gallagher, I believe, the former Director of Administration; and, secondly, the pass was no good during examinations period. At that time he asked, well, by what authority was I acting, and I told him that I was acting by the authority invested in me by the Dean of the law school, as being responsible for administration at the law school.

He wanted to know whether we had anything in writing, and I gave him the notice.

N.T. 9/18/81 pp. 47–50.

■ The facts as set forth indicate that Appellant (1) presented himself to Swygert and (2) communicated his need and desire to use the law library. Nothing in the record would indicate that Appellant's behavior on Decem-

ber 10th was anything but exemplary.[6] He merely wished to gain access to the law library by following the procedure established by the written posted notice. We also note that Appellant left the Klein Building on December 10th peaceably.

From these facts, we are unable to discern why Appellant was excluded on December 10th and for the remainder of the examination period. Professor Swygert alleges that Appellant exhibited a lack of "decorum". However, Appellant's obstreperous behavior was confined to the December 19th confrontation outside Swygert's office. Nowhere in the record does there appear *any* evidence that Appellant's behavior prior to December 10th or after the confrontation outside Swygert's office on December 19th was anything but proper, nor does the Commonwealth argue that Appellant's behavior was improper. In fact, the evidence reveals that Appellant had general passes prior to December 10th to use the law library and had used the library on numerous occasions without complaint. Finally, the record fails to disclose that Appellant's behavior at the time of his arrest *in the law library* was improper in any respect. Therefore, upon a review of the evidence, we believe that Appellant, on December 10th, had complied with all lawful conditions imposed on access and was improperly denied access to the library.

Concerning the December 19th confrontation outside Swygert's office and Appellant's subsequent arrest within the law library, we discern no cause and effect relationship. In order for a person to be lawfully excluded from using the law library for not demonstrating an ability to maintain the proper "decorum", there must be some relationship between that person's behavior *outside* the library and their anticipated behavior *within* the library itself. This relationship goes to the application of the restrictions imposed on access and a person's compliance with those restrictions.

6. We find no basis for a contrary determination based solely on Swygert's statement to Appellant requesting him to "please calm down", absent any explanation as to why this statement was made.

We shall assume that "decorum" is an appropriate condition placed on access in the instant case. As we have stated previously, Appellant's behavior, other than outside Swygert's office on December 19th, was proper. Our review of the December 19th confrontation outside Swygert's office indicates that Appellant's conduct, although overzealous, merely involved his attempts to enforce what he considered to be his right to use the law library. Appellant had previously attempted to meet the necessary qualifications for gaining access to the law library and had been improperly refused permission. We cannot say that Appellant's vigorous attempts to enforce his perceived rights under the instant circumstances, where the conduct occurred outside Swygert's office, had any relationship to Appellant's conduct should he have been allowed to use the library.

We note finally that the Commonwealth has not sought to argue that any cause and effect relationship existed, nor does the record provide any basis for a conclusion that such a relationship existed.

We conclude that the record discloses that Appellant complied with all conditions imposed on access as required by 18 Pa.C.S.A. § 3503(c)(2).

We therefore hold that, subject to the restrictions placed on access during the examination period, the law library was open to the public and that Appellant complied with all lawful conditions imposed on access to the law library. As such, the evidence was insufficient to support Appellant's conviction.

Because of our determination of this issue, we need not address Appellant's remaining issues.

Judgment of sentence is reversed and Appellant discharged.

CAVANAUGH, J., files a dissenting statement.

CAVANAUGH, Judge, dissenting:

Since, as I read the evidence, it fully supports the verdict in every respect and since I do not see the result to be

affected by 44 U.S.C.S. § 1901 et seq., I respectfully dissent.