J-S05008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOUGLAS BURTON LEUSCHEN | : | |
| | : | |
| Appellant | : | No. 804 WDA 2018 |

Appeal from the Judgment of Sentence March 20, 2018
In the Court of Common Pleas of Clarion County
Criminal Division at No(s): CP-16-CR-0000314-2017

BEFORE: PANELLA, P.J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY PANELLA, P.J.: **FILED AUGUST 15, 2019**

Appellant, Douglas Burton Leuschen, challenges the judgment of sentence entered in the Clarion County Court of Common Pleas, following his convictions for terroristic threats, harassment, and defiant trespass. Appellant contests the sufficiency of the evidence sustaining his convictions for terroristic threats and defiant trespass, and the certification of the transcript. After careful review, we affirm.

After a tree from his neighbor's property allegedly fell and damaged his shed in 2009, Appellant engaged in a protracted dispute with his neighbors, the Terwilligers. In 2016, the Terwilligers began sales talks with Shawn Smeltzer, who considered purchasing the property. While examining the property on two separate occasions before the sale, Smeltzer had run-ins with

_____

* Retired Senior Judge assigned to the Superior Court.

Appellant. Appellant told Smeltzer that the property was subject to a $75,000,000.00 lien under maritime law. When he learned the Terwilligers planned to sell their land, Appellant filed this lien in civil court, alleging the damages stemmed from the harm to his shed and other property rights the Terwilligers allegedly transgressed. The court removed that lien from the title, and the Terwilligers sold the property to Smeltzer.

Smeltzer, in turn, sold the rights to cut timber on the property to a lumber company. That lumber company sent Jeffrey Krach and other employees to fell trees on Smeltzer's land on March 27, 2017. As Krach cut the first tree, he heard shouting and saw Appellant waving his arms. Krach finished felling the tree, turned off his chainsaw, and removed his protective earmuffs so he could hear Appellant. Appellant screamed that if Krach cut down another tree, Appellant would kill him. As he shouted, Appellant was red-faced, with veins bulging on his forehead. Krach attempted to defuse the situation, to no avail. Appellant waved his finger at Krach, and continued to berate him with obscenities and death threats. Finally, he told Krach he would "blow [his] f-ing head off" if he cut another tree. N.T. Trial, 2/14/18, at 76.

Krach's boss attempted to intervene and calm Appellant. Appellant "kept going on about Freemasons and all kinds of other stuff," including the alleged lien he had on the property, which had been removed from the title several months prior. *Id*., at 78, 118, 119. Krach and his boss talked with Appellant for twenty minutes, and Appellant began speaking in a more reasonable tone. However, when Krach's boss asked Appellant if they could resume work,

Appellant warned them not to touch any of the trees. Krach's boss asked Appellant what he would do if they went back to work. Appellant's eyes became glazed, his face reddened, and he told the men to "go ahead and you'll find out" before storming away. *Id*., at 79. Concerned for their safety, Krach and his boss ceased work, and called Smeltzer.

Smeltzer arrived at the property and called the state police. As Smeltzer, Krach, and Krach's boss waited for the police to arrive, Appellant strode back onto Smeltzer's property and began yelling at the men. Appellant walked back to his home shortly thereafter. He was approaching Smeltzer's property for a third time when he saw the police. Trooper Tate Allison ordered Appellant to stop; Appellant disregarded the command, and began to flee. He was apprehended and arrested.

Appellant declined the assistance of counsel. The court permitted Appellant to proceed *pro se*, but appointed standby counsel for trial. At trial, the jury convicted Appellant of terroristic threats, harassment, and defiant trespass. The court sentenced Appellant to an aggregate 22-84 months' incarceration.

Standby counsel entered his appearance after Appellant's trial. He filed a post-sentence motion on Appellant's behalf, which was denied. Counsel then filed a timely notice of appeal, and complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). In Appellant's statement, he challenged the weight of the evidence supporting his convictions, the sufficiency of the evidence sustaining his

conviction for terroristic threats, and the certification of the transcript of his trial. He later requested this Court remand the case for the filing of a supplementary Rule 1925(b) statement. The Court permitted remand, and Appellant's supplementary statement challenged the sufficiency of the evidence sustaining his conviction for defiant trespass. This case is now properly before us.

Appellant first challenges the certification of the transcript in his case. He maintains that the court reporter signed the transcript, but also used an expired notary stamp to accompany her signature. Appellant contends that the invalid notary stamp also voids the court reporter's handwritten signature, as the use of an expired stamp diminishes faith in the court system as a whole. While Appellant concedes he has no objection to the content of the transcript, he believes this Court cannot properly review this "tainted" document. Appellant concludes his case should be remanded for a new trial. We flatly disagree.

We note that "[o]bjections to the trial transcript are properly settled in the [trial] court." ***Commonwealth v. Szakal***, 50 A.3d 210, 217 (Pa. Super. 2012) (citing Pa.R.A.P. 1922(a)).

The Pennsylvania Rules of Judicial Administration set forth the requirements for the certification of a transcript:

> Court reporting personnel who take the notes, record or transcribe a proceeding shall certify that the transcript of proceedings is true and correct and meets the format specifications established by the Supreme Court of Pennsylvania in Rule 4010. When more than

one person was engaged in the production of the transcript, each shall certify as to his or her contribution.

Pa.R.J.A. 4013.

Here, the court reporter certified the transcript in accordance with Rule 4013 by affirming that she transcribed the document and its contents were true and correct. She also affixed a notary stamp to the document, which the parties agree was expired at the time it was used. Though using the stamp was perhaps ill-considered, Pa.R.J.A. 4013 does not require that a transcript be certified by a notary. Instead, the Rule merely requires that the court reporter certify its contents. Because the court reporter was not required to be a notary in order to satisfy certification requirements, her use of an expired notary stamp is of no moment. The court reporter properly completed certification when she signed the document. And as the trial court notes, and Appellant concedes, he has lodged no objection against the *content* of the transcript, merely its certification. **See** Pa.R.A.P. 1925(a) Opinion, filed 6/27/18, at 9; Appellant's Brief, at 14. Therefore, we see no reason to invalidate the transcript based on this meritless issue.[1]

In Appellant's next issue, he challenges the sufficiency of the evidence sustaining his conviction for terroristic threats. Appellant argues that he threatened Krach "in the heat of the moment." Appellant's Brief, at 15.

_____

[1] We also question Appellant's suggestion that the court reporter acted criminally by impersonating a notary public under 18 Pa.C.S.A. § 4913. We remind Appellant that criminal charges are within the purview of the prosecutorial arm of this Commonwealth. **See In re Wilson**, 879 A.2d 199, 205 (Pa. Super. 2005) (as "criminal prosecutions are sought to rectify injuries to society, the only aggrieved party, if one exists, is the Commonwealth").

Appellant avers his intent was to protect his property interest, not to terrorize Krach or anyone else.

Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. **See Commonwealth v. Dale**, 836 A.2d 150, 152 (Pa. Super. 2003).

"The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." **Commonwealth v. Bruce**, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted). Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. **See Commonwealth v. Kinney**, 863 A.2d 581, 584 (Pa. Super. 2004). "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." **Id**. (citation omitted). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." **Bruce**, 916 A.2d at 661 (citation omitted). Evidence is weak and inconclusive "[w]hen two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances …." **Commonwealth v. Woong Knee New**, 47 A.2d 450, 468 (Pa. 1946). However, "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable

doubt by means of wholly circumstantial evidence." ***Commonwealth v. Gibbs***, 981 A.2d 274, 281 (Pa. Super. 2009) (citations omitted).

"A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to … commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1). To sustain such a conviction, the Commonwealth must prove that the defendant threatened to commit a crime of violence, and that the defendant communicated the threat in order to terrorize another person or acted with reckless disregard for the risk of causing terror. ***See Commonwealth v. Beasley***, 138 A.3d 39, 46 (Pa. Super. 2016). "Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." ***Id***. (citation omitted). And, "[b]eing angry does not render a person incapable of forming the intent to terrorize." ***Commonwealth v. Walls***, 144 A.3d 926, 936 (Pa. Super. 2016) (citation omitted).

As support for his theory that he acted only out of transitory anger, Appellant offers the case of ***Walls***. In ***Walls***, an assistant district attorney was shopping in a mall when the appellant, who was also in the mall, noticed her and began yelling that she had wrongfully prosecuted him. The appellant shouted that the attorney had caused his grandmother's death, and that she should be next. The trial court convicted him of terroristic threats. On appeal, this Court reversed the judgment of sentence, holding that "the chance nature of the parties' meeting and the spontaneous anger that the encounter instilled

in the defendant" constituted insufficient evidence to support a terroristic threats conviction. *Id*., at 937.

Here, Appellant mounted a years-long harassment campaign against the Terwilligers, whom Appellant believed owed him money. *See* N.T. Trial, 2/14/18, at 116-119. When the Terwilligers prepared to sell their land to Shawn Smeltzer, Appellant began badgering Smeltzer about the money allegedly owed. *See id*., at 51-52. After buying the Terwilligers' land, Smeltzer arranged to have Jeffrey Krach and other crew members cut down trees on the property. *See id*., at 50. Appellant, in full awareness that the land no longer belonged to the Terwilligers, crossed the property boundary between his estate and Smeltzer's land. *See id*., at 72-74. Appellant then approached Krach and threatened to "blow [his] f-ing head off" for cutting down the trees. *Id*., at 76. When Krach and later Krach's boss attempted to calm Appellant, he briefly relented, only to redouble his threats later. *See id*., at 118-119. Appellant told the men to "go ahead and find out" what he would do if they cut down another tree, before furiously stalking away. *Id*., at 79.

Far from a bout of spontaneous anger brought on by a random encounter, as in *Walls*, the interaction between Appellant and Krach took place because Appellant intentionally crossed the property boundary. Appellant did so in order to intimidate Krach into halting his work, by communicating that he would kill Krach if he continued. Appellant's contention that this behavior was a "heat of the moment" reaction based on transitory anger, and that he therefore lacked intent to terrorize Krach, ignores his

pattern and practice of harassing any person associated with the Terwilliger land. Appellant purposefully engineered the very situation that made him angry. He cannot claim a lack of intent to terrorize based on that anger. Therefore, we affirm Appellant's conviction for terroristic threats.

In Appellant's final issue, he challenges the sufficiency of the evidence supporting his conviction for defiant trespass. Appellant claims he was never instructed to stay off the property by the Terwilligers or Smeltzer. Appellant argues that the subsection of the statute under which he was charged required proof that Appellant received actual communication not to trespass. He believes that here, where he alleges no such communication occurred, this Court must vacate his conviction. We disagree.

Appellant was charged under 18 Pa.C.S.A. § 3503(b)(1)(i), which states that a person commits the offense of defiant trespass if, "knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by … actual communication to the actor[.]" 18 Pa.C.S.A. § 3503(b)(1)(i). Evidence that an appellant was informed multiple times he was unwelcome on private property and thereafter intruded on the property is sufficient to sustain a conviction for defiant trespass. **See Commonwealth v. Bennett**, 124 A.3d 327, 331 (Pa. Super. 2015). Further, a person once welcome on private property may have that access rescinded and become subject to a defiant trespass charge if he continues to intrude. **See Commonwealth v. Downing**, 511 A.2d 792, 795 (Pa. 1986).

By his own admission, Appellant exchanged heated words with Mr. Terwilliger when Terwilliger came to put up no-trespassing signs on the boundary between his property and Appellant's land. N.T. Trial, 2/14/18, at 101. Appellant also testified about the ongoing disputes he had with Terwilliger about trespassing. *See id*., at 102. And, Krach testified that no-trespassing signs were "all the way around" the property, including along the side facing Appellant's land, at the time of the confrontation. *Id*., at 80. Finally, Trooper Allison testified about his discussion with Appellant before his arrest. When Trooper Allison asked Appellant if he would stop trespassing on the property, Appellant replied that Allison "might as well kill [him]." *Id*., at 91.

Thus, Appellant had actual communication from Mr. Terwilliger that he was unwelcome on the Terwilliger property. Terwilliger put up no-trespassing signs all along the property, in the midst of a verbal confrontation with Appellant. The signs were placed along the border of the Terwilliger property facing Appellant's land. The signs stayed up after Smeltzer purchased the property, and were still hanging on the day that Appellant crossed over onto the Terwilliger property. And though Appellant offered the thin defense that he had been on the Terwilliger property years earlier, the jury clearly found that defense unavailing. Based on the foregoing, we find the evidence sufficient to sustain Appellant's conviction for defiant trespass. As Appellant is due no relief on any of his issues, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/15/2019</u>