J-A13004-24

2024 PA Super 166

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TYREECE MIYARES | : | |
| | : | |
| Appellant | : | No. 574 WDA 2023 |

Appeal from the Judgment of Sentence Entered April 18, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008948-2022

BEFORE: OLSON, J., SULLIVAN, J., and BENDER, P.J.E.

OPINION BY OLSON, J.: **FILED: July 31, 2024**

Appellant, Tyreece Miyares, appeals from the judgment of sentence entered on April 18, 2023, following his bench trial convictions for two counts of harassment.[1] We affirm.

We briefly summarize the facts and procedural history of this case as follows. Appellant lives next door to two adult male romantic partners, the victims in this case, in the Brighton Heights neighborhood of Pittsburgh, Pennsylvania. On August 18, 2022, the victims installed security cameras after one of the men was assaulted by a guest from Appellant's residence. On September 16, 2022, the victims went to the police to file a report that they had been harassed. More specifically, the victims alleged that between August 25, 2022 and September 16, 2022, on nine separate occasions, Appellant walked toward the victims' residence, looked directly into the video

---

[1] 18 Pa.C.S.A. 2709(a)(4).

camera and flashed his middle finger. In one instance, on August 27, 2022, Appellant showed his middle finger and shouted the term "gay bitch" as he looked at the security camera. On September 24, 2022, Pittsburgh police officers filed a criminal complaint against Appellant alleging two counts of harassment pursuant to Section 2709(a)(4). On April 18, 2023, Appellant proceeded to a bench trial wherein the victims and Appellant testified. The victims testified that they felt threatened, uncomfortable, and unsafe because of Appellant's conduct. Moreover, the Commonwealth admitted the nine security videos at issue into evidence. By order entered on April 18, 2023, the trial court found Appellant guilty of both counts of harassment and sentenced Appellant to an aggregate term of six months of non-reporting probation. This timely appeal resulted.[2]

On appeal, Appellant presents a sole issue for our review:

> I. Whether the Commonwealth presented sufficient evidence to sustain [Appellant's] two convictions for harassment, pursuant to 18 Pa.C.S.A. § 2709(a)(4), where it failed to prove, beyond a reasonable doubt, that his display [of his] middle finger to a camera constituted "lewd, lascivious, threatening or obscene" behavior?

Appellant's Brief at 5.

---

[2] Appellant filed a timely notice of appeal on May 17, 2023. On May 25, 2023, the trial court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Following a court-ordered extension of time, Appellant complied timely on July 21, 2023. On August 28, 2023, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

In sum, Appellant argues:

Neither of [Appellant's] convictions for [h]arassment pursuant to Section 2709(a)(4) can be sustained. The Commonwealth's evidence established that [Appellant] gave the middle finger to the complainants' camera several times, and on one occasion he said, 'gay bitch.' While [Appellant's] conduct was rude, insulting, and entirely unworthy of praise, the salient fact remains that it was not 'lewd,' 'lascivious,' 'obscene' or 'threatening' as contemplated by the statute. Consequently, his conviction must be reversed, and his judgment of sentence must be vacated.

*Id.* at 9. Appellant claims that his "conduct was clearly meant to be emphatic and course" but "not descriptive of an act of sex" and, therefore, "[b]y definition … not 'lewd' or 'lascivious' or 'obscene.'" *Id.* at 17. Likewise, while Appellant concedes that his conduct "was rude and insulting," he argues it was not "threatening" because "his conduct did not constitute 'fighting words' since it was not 'inherently likely to provoke a violent reaction.'" *Id.* at 20 (citation omitted). Finally, Appellant maintains that the trial court erroneously relied upon a course of conduct under a different subsection of the harassment statute, 18 Pa.C.S.A. § 2709(a)(3), for which Appellant was not charged. *Id.* at 12.

We adhere to the following standards:

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. When performing this review, we may not reweigh the evidence or substitute our own judgment for that of the fact finder.

\*       \*       \*

> "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: ... (4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures[.]" 18 Pa.C.S.A. § 2709(a)(4). An intent to harass may be inferred from the totality of the circumstances.

***Commonwealth v. Cox***, 72 A.3d 719, 721 (Pa. Super. 2013) (internal case citations and some quotations omitted). Furthermore, the harassment statute defines the term "communicates" as "convey[ing] a message without intent of legitimate communication or address by oral, nonverbal, written or electronic means, including telephone, electronic mail, internet, facsimile, telex, wireless communication or similar transmission." 18 Pa.C.S.A. § 2709(f).

This Court has further "recognize[d] that a harassment conviction is arguably not predicated on the speech itself but rather the conduct accompanying the speech." ***Commonwealth v. Hanner***, 303 A.3d 752, at *4 (Pa. Super. 2023) (non-precedential decision).[3] "The statute is not directed at the content of speech and is unrelated to the suppression of free expression. Rather, the statute focuses on the manner and means of communication and proscribes communications made with an intent to harass." ***Id.***, *citing* ***Commonwealth v. Hendrickson***, 724 A.2d 315, 318 (Pa. 1999). Under the harassment statute, communications are considered threatening if they do not fall within an identified exception to the First Amendment and constitute "fighting words" or "true threats." ***See Hanner***,

---

[3] This Court may cite its non-precedential memoranda filed after May 1, 2019 for persuasive value. ***See*** Pa.R.A.P. 126(b).

303 A.3d 752, at *6. "The States are free to ban the simple use, without a demonstration of additional justifying circumstances, of so-called 'fighting words,' those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." *Id.* citing **Cohen v. California**, 403 U.S. 15, 20 (1971) (original brackets omitted); **see also Commonwealth v. Lutes**, 793 A.2d 949, 962 (Pa. Super. 2002) (citation omitted) (describing "fighting words" as "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace … are of no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument."). "Whether language qualifies as 'fighting words' requires consideration of the facts." **Hanner**, 303 A.3d 752, at *6 (citation omitted). "[I]n determining whether words constitute fighting words, the circumstances surrounding the words can be crucial, for only against the background of surrounding events can a judgment be made whether the words had a direct tendency to cause acts of violence by others." **Id.** (citation omitted; brackets supplied). Furthermore, "[s]peech which communicates a serious expression of intent to commit an act of unlawful violence against a particular individual or group of individuals — more commonly referred to as

a 'true threat' — is another certain class of speech that is beyond the protective ambit of the First Amendment. *Id.* at *7 (citation omitted). "The hallmark of a 'true threat' is that it 'threatens unlawful violence.'" *Id.* (citation omitted).

Here, the trial court determined that Appellant's act of "raising [his] middle finger in this case [was] prohibited 'nonverbal' communication as defined in Section 2709(f)" and there was no "legitimate purpose for his communication." Trial Court Opinion, 8/28/2023, at 4. In conjunction, the trial court noted that saying "gay bitch" was commenting on the victims' "sexual orientation and support[ed] the inference that [Appellant's] conduct was intended to harass." *Id.* Moreover, at trial when rendering its verdict, the trial court asked Appellant to consider "being in that space where every time you come and go someone is … remind[ing] you that you don't belong." N.T., 4/18/2023, at 50; *id.* at 49-50 ("Think about if your mother … was given the finger or someone put up a confederate flag every time she came out the door or she came home from work or every time she walked to or from her car and gave her the finger and called her the N word"); *see also id.* at 51 ("[T]hese two gentlemen, minding their business, buying a home, living there, trying to create a nice home for their family, they're not bothering anybody, just trying to live their lives but because you or someone else reached the conclusion that you don't like how they get down, you don't like their … sexual orientation … so you decide you are going to make it inconvenient, as uncomfortable for them to be there as possible. You wouldn't tolerate it. You

wouldn't like it if someone did it to you because of the color of your skin."). Hence, the trial court determined that Appellant intended to inflict injury, incited an immediate breach of the peace, and the communications had slight social value.

We agree with the trial court's assessment and conclude that Appellant's use of the term "gay bitch" (similar to the use of a racial slur) was a personal, abusive epithet and, therefore, fighting words likely to provoke a violent reaction. Even Appellant admits that the communication was crude, emphatic, and/or a course means of expressing social commentary. Additionally, in this case, the trial court examined the totality of the circumstances and background of surrounding events, as required, noting "nine occasions, over no more than three-week span" as a "continued course of conduct" and recognized that the victims installed security cameras based upon a previous, unrelated assault. Trial Court Opinion, 8/28/2023, at 4. Indeed, the record contains ample evidence to support the trial court's finding that Appellant specifically intended to harass the victims. As the court noted, this was not an isolated incident and Appellant's repeated conduct supported the inference that it was not incidental and there was specific intent. Hence, we reject Appellant's suggestion that he was convicted under another subsection of the harassment statute pertaining to course of conduct. Finally, the trial court also credited the victims' testimony that they felt threatened by Appellant's actions, and we may not usurp that determination. Based upon the totality of the evidence presented, we conclude that the Commonwealth sufficiently

supported the two harassment convictions under Section 2709(a)(4). Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/31/2024