J-A02035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                 :           PENNSYLVANIA
                                 :
            v.                      :
                                   :
                                   :
JASON GERALD BIRDWELL             :
                                   :
          Appellant              :    No. 76 WDA 2024

Appeal from the Judgment of Sentence Entered August 9, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007674-2022

BEFORE: KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY BECK, J.:                   **FILED: April 8, 2025**

Jason Gerald Birdwell ("Birdwell") appeals from the judgment of sentence entered by the Allegheny County Court of Common Pleas ("trial court") following his convictions of possessing an offensive weapon, recklessly endangering another person ("REAP"), harassment, reckless driving, and following too closely.[1] Birdwell challenges the sufficiency of the evidence with respect to his possessing an offensive weapon, REAP, and harassment convictions. Because we the find evidence sufficient to sustain each of these convictions, we affirm.

The trial court summarized the factual history of this case as follows:

> This matter arises out of [Birdwell]'s arrest on September 29, 2022. At trial[,] the Commonwealth presented the testimony of the victim, Denise Judkins-Smail [("Victim")], who testified that

---

[1] 18 Pa.C.S. §§ 908(a), 2705, 2709(a)(4); 75 Pa.C.S. §§ 3736(a), 3310(a).

on September 29, 2022, she was driving from Pitcairn to Monroeville with her granddaughter, taking her granddaughter to a job interview. N.T., 7/27/2023, at 10. [Victim] was traveling on Broadway Avenue and wanted to make a right turn onto Wall Avenue. She drove around three cars and made a right onto Wall Avenue and proceeded towards Monroeville. After making the righthand turn[, Victim] noticed that there was a car directly behind her vehicle. She described the car as "behind me on the butt of my car." *Id.* As [Victim] drove faster, the car behind her drove faster and stayed with her and followed her when she made a left turn onto Route 22. *Id.* While she was stopped on Route 22, [Birdwell] opened [the] door of his car and pointed at his chest, which she testified scared her. [Victim] testified that she was speeding "because he was on my back end, and I couldn't get away from him." *Id.* at 10-11. She estimated that [Birdwell] followed her for approximately ten miles. *Id.* at 12. [Victim] then pulled into [a Five Guys restaurant] parking lot and [Birdwell] pulled in behind her as she was getting out of her car. [Victim] testified that [Birdwell] "comes up to my car and basically started yelling and screaming at me." *Id.* at 11. She testified that as she tried to walk in front of her car that [Birdwell] "pinned me up against the front bumper" and he was so close to her that he was "spitting in my face." *Id.* at 13. [Victim stated] that "he was yelling at me about speeding, and he was yelling at me that I had no right to be on the road." *Id.* She finally "wiggled away from him" and as she walked toward a store [Birdwell] "kept screaming at me." [Victim] then called 911 because he would not leave her alone and she was instructed to get the license plate of the car [Birdwell] was driving. *Id.* at 16. She testified that she was told by the 911 operator to get into her car but "every time I try to get to the door, he blocks me." *Id.* Another person approached and stated that she had called 911 and [Birdwell] then drove away from the scene. *Id.*

[Victim] testified that she did not know [Birdwell] and that when he opened the door and got out of his car on Route 22, she could see that he pointed at the "camcorder" on his chest. *Id.* at 17. When she saw him in the parking lot, she could see that he had [a] body camera on. *Id.* at 18. [Victim] testified that "she never experienced anything like" [Birdwell]'s conduct and that "[m]y safety zone is gone. I don't feel safe anywhere. I am always looking behind my back." *Id.* She testified that it affected her emotionally and her anxiety has increased such that she has increased her medications and she is fearful of going out of her

house. ***Id.*** On cross examination, [Victim] testified that [Birdwell] never told her he was a police officer but, when he pinned her against her car, he did say that "he ran my license plate, and he knew my name" and "he knew that I lived in Wall." ***Id.*** at 20. She also testified that as [Birdwell] followed her that she "was afraid he was going to hit me." ***Id.*** at 22.

The Commonwealth also called Sergeant James [MacDonald] of the Monroeville Police Department. Sergeant [MacDonald] testified that he was the supervisor on duty at the time of the incident and he reported to the traffic stop after [Birdwell] was stopped after leaving [Victim] in the parking lot. ***Id.*** at 25. … [Sergeant MacDonald] testified [Birdwell] was detained and his vehicle was secured, and he was going to apply for a search warrant, but [Birdwell] gave consent to the search the vehicle. During the search of the vehicle, [Sergeant MacDonald] found numerous items police officers carry in the line of duty, including mace, an ASP[, (]which is a metal retractable baton, notebooks, in which [Birdwell] recorded people speeding or violations[)], and holsters for carrying a firearm. ***Id.*** at 29-31, 35. There was also an electric stun gun [(]or Taser[),] and mace. ***Id.*** at 30. Sergeant [MacDonald] testified that metal batons and stun guns are available for sale[,] but can be considered a prohibited weapon. ***Id.*** at 36. He testified that he has never taken a report where a person was using a stun gun as a self-defense weapon[,] but has "come across a person carrying a stun gun for self-defense purposes." ***Id.***

The Commonwealth also called Officer Sarah Bonner of the Monroeville Police Department who testified that when she arrived at the scene[, Victim] was hysterical and visibly shaken because [Birdwell] had followed her from Pitcairn and scared her. ***Id.*** at 39[.]

Trial Court Opinion, 5/29/2024, at 2-5 (record citations modified).

The trial court also summarized the procedural history of this case:

[The trial court found Birdwell] guilty following a non-jury trial on July 27, 2023, of [possessing an offensive weapon, REAP, harassment, reckless driving, and following too closely]. … For the [possessing an offensive weapon] conviction, [Birdwell] was sentenced to two (2) years [of] probation. For the conviction of [REAP, Birdwell] was sentenced to a concurrent period of two (2)

years [of] probation[,] and for the harassment conviction a concurrent period of one year [of] probation. On August 14, 2023, [Birdwell] filed post[-]sentence motions[,] which were denied … on December 12, 2023. On January 11, 2024, [Birdwell] filed a notice of appeal to the Superior Court. On April 29, 2024, an order was entered directing [Birdwell] to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). On May 20, 2024, [Birdwell filed his concise statement[.]

Trial Court Opinion, 5/29/2024, at 1-2 (unnecessary capitalization omitted).

Birdwell presents the following issues for review:

I.      Whether the evidence was insufficient to convict [Birdwell] of [possessing an offensive weapon] where the Commonwealth failed to prove, beyond a reasonable doubt that any device recovered from his vehicle was a prohibited offensive weapon and that it served no common lawful purpose?

II.     Whether the evidence was insufficient to convict [Birdwell] of [REAP] where the Commonwealth failed to prove, beyond a reasonable doubt, that [Victim] was placed in danger of death or serious bodily injury?

III.    Whether the evidence was insufficient to convict [Birdwell] of [h]arassment where the Commonwealth failed to prove, beyond a reasonable doubt, that he communicated to or about complainant any lewd, lascivious, threatening or obscene words, language, drawings or caricatures?

Birdwell's Brief at 5.

Birdwell's issues challenge the sufficiency of the evidence for three of his convictions. "A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the

fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017) (quotation marks and citation omitted). Furthermore, "a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." ***Id.*** "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." ***Id.***

In his first issue, Birdwell challenges the sufficiency of the evidence to support a finding that he possessed an offensive weapon. ***See*** Birdwell's Brief at 14-19. First, Birdwell argues that there was no evidence that police recovered an offensive weapon during the consensual search of his vehicle, as neither of the officers described the stun gun in any detail, provided its brand, or its serial number. ***Id.*** at 17. Second, Birdwell asserts that the Commonwealth failed to establish that his possession of the stun gun served no common lawful purpose because he "was not in actual possession of the subject item, but rather it was found during a custodial search of his car [and] there was no testimony that the item was found where it would have been within [his] reach, or that it was even found in the car's interior as opposed to the trunk." ***Id.*** at 18. Thus, Bidwell contends that there was no evidence that he intended to use the taser unlawfully. ***Id.***

The Crimes Code defines possessing an offensive weapon as follows: "A person commits a misdemeanor of the first degree if, except as authorized by law, he makes repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon." 18 Pa.C.S. § 908(a). Section 908(c) defines "offensive weapon" as:

> Any bomb, grenade, machine gun, sawed-off shotgun with a barrel less than 18 inches, firearm specially made or specially adapted for concealment or silent discharge, any blackjack, sandbag, metal knuckles, **any stun gun**, stun baton, taser or other electronic or electric weapon or other implement for the infliction of serious bodily injury which serves no common lawful purpose.

*Id.* § 908(c) (emphasis added). Section 908(b) further states that "[i]t is a defense under this section for the defendant to prove by a preponderance of evidence that he possessed or dealt with the weapon solely … under circumstances similarly negativing any intent or likelihood that the weapon would be used unlawfully." *Id.* § 908(b)(1).

Further,

> [w]here a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish

- 6 -

facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

***Commonwealth v. Parrish***, 191 A.3d 31, 36-37 (Pa. Super. 2018) (citations and quotation marks omitted).

The record reflects that on the day in question, Victim was driving through Pitcairn when she noticed a car "on the butt of my car[,]" within two feet of her bumper. N.T., 7/27/2023, at 10-11. The car was tailing Victim so closely that she thought that it was going to crash into her bumper. ***Id.*** at 11. Victim indicated that the car followed her for at least ten miles. ***Id.*** at 12. Victim eventually pulled into a Five Guys parking lot where the car immediately pulled up behind her. ***Id.*** at 11-12. Birdwell got out of the car, approached Victim's car and began screaming profanities at her because he thought she was driving too fast. ***Id.*** at 11-13, 17. When Victim attempted to exit her vehicle and walk away from her car, Birdwell pinned her up against the car and continued to berate her, spitting in her face while doing so. ***Id.*** at 13. When Victim was eventually able to wiggle herself away from Birdwell, she attempted to enter the Five Guys restaurant, but Birdwell followed her and continued to scream at her, so she dialed 911. ***Id.*** at 14-15, 23. As Birdwell continued yelling at Victim, he told her that he ran her license plate, that he knew her name, and knew where she lived. ***Id.*** at 20. After speaking with the police dispatcher, Victim attempted to get back inside her car, but

she was unable to do so because Birdwell repeatedly blocked her path of entry. *Id.* at 16.

The record further reflects that after police apprehended Birdwell, he verbally consented to a search of his vehicle. *Id.* at 29. Sergeant MacDonald testified that among the items police recovered during the search was an "electric stun gun" or "taser." *Id.* at 30.

Here, Sergeant MacDonald testified that police recovered an "electric stun gun" or "taser," *Id.*, which section 908(c) plainly lists as an offensive weapon. 18 Pa.C.S. § 908(c). Birdwell cites no authority in support of his claim that it was also necessary for the Commonwealth to present detailed information about the stun gun, including its brand or serial number. Indeed, no portion section 908 contains any such requirement. *See generally id.* § 908. Thus, this argument does not entitle Birdwell to relief.

As for Birdwell's claim that there was no evidence that it was in his possession, we disagree. While there may not have been evidence that he was in actual possession of the stun gun, there was evidence that he constructively possessed it. Sergeant MacDonald testified that police recovered the stun gun during the search of Birdwell's vehicle. N.T., 7/27/2023, at 29-30. This was sufficient to conclude that Birdwell had conscious dominion over the stun gun with the intent to exercise control over it. *See Parrish*, 191 A.3d at 36-37.

Finally, as to Birdwell's claim that there was no evidence that he possessed the stun gun for no common lawful purpose, we emphasize that "[s]ection 908 reflects a strong public policy to dissuade persons from carrying and brandishing weapons or any 'objects' which have the appearance or characteristics of an offensive weapon." *Commonwealth v. Ponds*, 345 A.2d 253, 255-56 (Pa. Super. 1975) (en banc). "The primary concern of the statute is the nature of the weapon, not the intention of its possessor." *Commonwealth v. Walton*, 380 A.2d 1278, 1280 (Pa. Super. 1977) (en banc). "[T]he key inquiry in a [s]ection 908(c) case is whether the item in question has [a] common lawful purpose[.]" *Commonwealth v. Ashford*, 397 A.2d 420, 423 (Pa. Super. 1979) (en banc). "While some conceivable lawful use could be found for almost every object otherwise proscribed by [s]ection 908, the statute does not prohibit only items with no **conceivable** lawful purpose, but, more broadly, items with no common lawful purpose." *Commonwealth v. Hitchon*, 549 A.2d 943, 947 (Pa. Super. 1988) (citation omitted; emphases in original).

In this case, based on the totality of the circumstances, the evidence the Commonwealth presented to the trial court, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to conclude that Birdwell did not possess the stun gun for any common lawful purpose. *See Miller*, 172 A.3d at 640; *see also Hitchon*, 549 A.2d at 947. Additionally, Birdwell did not present any evidence himself at trial that he

possessed the stun gun for a lawful purpose, such as self-defense, under section 908(b)(1). **See** 18 Pa.C.S. § 908(b)(1). Accordingly, we conclude that the evidence was sufficient to sustain Birdwell's conviction of possessing an offensive weapon.

For his second issue, Birdwell challenges the sufficiency of the evidence to support his conviction of REAP. **See** Birdwell's Brief at 20-26. Birdwell asserts that there was insufficient evidence to conclude that he created a substantial risk of serious bodily injury or death to Victim. **Id.** Birdwell contends that there was only evidence that he was following Victim's car too closely for her comfort and that the Commonwealth needed to present evidence he collided with, nearly collided with, or tried to collide with Victim's vehicle in order establish a risk of death or serious bodily injury. **Id.** at 25.

A person commits REAP "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. "Recklessly endangering another person is a crime directed against reckless conduct entailing a serious risk to life or limb out of proportion to any utility the conduct might have." **Commonwealth v. Vogelsong**, 90 A.3d 717, 719 (Pa. Super. 2014) (quotation marks and citation omitted). "[T]o sustain a conviction under [s]ection 2705, the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. Danger, not

merely the apprehension of danger, must be created." *Commonwealth v. Dewald*, 317 A.3d 1020, 1038 (Pa. Super. 2024).

In support of his claim that his vehicular pursuit of Victim did not establish recklessness, Birdwell cites *Commonwealth v. Hutchins*, 42 A.3d 302 (Pa. Super. 2012), and *Commonwealth v. Mastromatteo*, 719 A.2d 1081 (Pa. Super. 1998). *See* Birdwell's Brief at 21-22. In *Mastromatteo*, the appellant was convicted of driving under the influence ("DUI") and REAP for driving her young son in a vehicle while intoxicated. *Mastromatteo*, 719 A.2d at 1082. This Court, in vacating the appellant's conviction of REAP, held that "driving under the influence of intoxicating substances does not create legal recklessness per se but must be accompanied with other tangible indicia of unsafe driving to a degree that creates a substantial risk of injury which is consciously disregarded." *Id.* at 1083. The Court reasoned that to conclude otherwise would result in any conviction of DUI also being accompanied by a conviction of REAP. *Id.* at 1082-83.

In *Hutchins*, the appellant was convicted of, inter alia, DUI and REAP after he made a left turn and hit another vehicle while driving under the influence of marijuana. *Hutchins*, 42 A.3d at 304. This Court, which vacated the appellant's conviction of REAP, relied on *Mastromatteo* to conclude that "the Commonwealth was required to present evidence of recklessness in addition to [the appellant's] intoxication" to sustain the conviction of REAP

and that "[t]he only other relevant evidence presented in this matter is that an accident occurred." ***Id.*** at 312.

This case is readily distinguishable from both ***Mastromatteo*** and ***Hutchins***. First, there is no evidence in this case that Birdwell was driving while intoxicated, rendering the central tenet of those cases inapplicable. Second, there was ample evidence indicating that he was driving in a reckless manner that placed Victim at substantial risk of death or serious bodily injury. The record reflects that while driving ten miles per hour over the speed limit, Birdwell closely tailed Victim's vehicle at a distance of approximately two feet for roughly ten miles. N.T., 7/27/2023, at 10-12. Because of Birdwell's actions, even a slight driving mistake on his part or on the part of Victim would have resulted in a crash that could have resulted in death or serious bodily injury.

Accordingly, based on the totality of the circumstances and viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the evidence established that Birdwell's actions were reckless and placed her in danger of death or serious bodily injury. ***See Miller***, 172 A.3d at 640; ***see also Dewald***, 317 A.3d at 1038; ***Vogelsong***, 90 A.3d at 719. We therefore conclude that the evidence was sufficient to sustain Birdwell's conviction of REAP.

For his third and final issue, Birdwell challenges the sufficiency of the evidence to support his conviction of harassment. ***See*** Birdwell's Brief at 27-

32. Birdwell maintains that the Commonwealth failed to present evidence that he communicated lewd, lascivious, threatening or obscene words sufficient to sustain a conviction of harassment. *Id.* at 32. Specifically, Birdwell asserts that there was no evidence that he used any obscene language and claims that he never verbally threatened to physically harm Victim. *Id.* at 27, 31-32.

Under section 2709 of the Crimes Code, "[a] person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person … communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures[.]" 18 Pa.C.S. § 2709(a)(4). Section 2709 defines the term "communicates" as "convey[ing] a message without intent of legitimate communication or address" including by both "oral" and "nonverbal" means. *Id.* § 2709(f). Additionally, with respect to the crime of harassment, this Court has explained:

> This Court has … recognized that a harassment conviction is arguably not predicated on the speech itself but rather the conduct accompanying the speech. The statute is not directed at the content of speech and is unrelated to the suppression of free expression. Rather, the statute focuses on the manner and means of communication and proscribes communications made with an intent to harass.

*Commonwealth v. Miyares*, 320 A.3d 740, 743-44 (Pa. Super. 2024) (brackets, quotation marks, footnote, and citations omitted).

At the outset, we point out that the record belies Birdwell's claim that he did not use obscene language when he confronted Victim. Victim expressly testified that in the Five Guys parking lot, as Birdwell pinned her against her vehicle and berated her, he spoke to her using profanity. N.T., 7/27/2023, at 17.

In addition to his use of profanity, Birdwell's entire course of conduct with respect to Victim reflected an intent to harass. Birdwell tailed Victim's vehicle for approximately ten miles at a distance of about two feet. *Id.* at 11-12. When she pulled into the Five Guys parking lot, Birdwell got of his car, pinned Victim against her car as she tried to exit her vehicle, and would not let her leave her car or the scene while he screamed in her face. *Id.* at 11-23. Birdwell also told Victim that he ran her license plate, that he knew her name, and knew where she lived. *Id.* at 20. Victim also indicated that she did not feel safe during this interaction, and she no longer feels safe outside her home. *Id.* at 18-19.

Once again, based on the totality of the circumstances and viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude the evidence was sufficient to sustain this conviction. The Commonwealth's evidence established that Birdwell used both verbal and nonverbal communication that was both obscene and threatening and done with the intent to harass Victim. *See Miyares*, 320 A.3d at 743 (noting "[a]n intent to harass may be inferred from the totality of the circumstances"); *see*

***also*** 18 Pa.C.S. § 2709(a)(4), (f). We therefore conclude that the evidence was sufficient to sustain Birdwell's harassment conviction.

As we find no merit to Birdwell's challenges to the sufficiency of the evidence of his possessing an offensive weapon, REAP, and harassment convictions, he is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/08/2025