J-A19011-25

2025 PA Super 244

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
:
v.                                    :
:
:
RICHARD M. BETTIS                     :
:
Appellant              :    No. 1188 WDA 2024

Appeal from the Judgment of Sentence Entered July 22, 2024
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0000137-2022

BEFORE:  BOWES, J., STABILE, J., and BENDER, P.J.E.

OPINION BY BENDER, P.J.E.:               **FILED: October 28, 2025**

Richard M. Bettis (Appellant) appeals from the judgment of sentence of one year of probation, imposed following his convictions for resisting arrest, defiant trespass, disorderly conduct, and harassment.[1]  He challenges the authority of the school police officers to arrest him, the sufficiency of the evidence for his convictions, and also claims that the guilty verdicts are contrary to the weight of the evidence provided.  We affirm.[2]

_____

[1]  18  Pa.C.S.  §§ 5104,  3503(b)(1)(i),  5503(a)(1),  and  2709(a)(1), respectively.

[2] On August 4, 2025, the day before oral argument was scheduled in this appeal, defense counsel filed an application to move oral argument to the expedited list.  As the motion was filed the day before arguments, the panel did not have the time to issue a formal order granting the request. Nonetheless, this case was argued on an expedited basis.  We therefore deny the outstanding defense motion as moot.

Charges in this case surround Appellant's actions on September 10, 2021. The trial court set forth the facts of this incident as follows:

Hempfield Area School District Police Officer Shannon Binda testified that, on September 10, 2021, he was checking people in at the high school front desk, along with Chief [Len] Lander. A female student was sitting next to the front desk at that time. [Appellant] came to the front doors and was "buzzed in" by the officers. [Appellant] wanted to speak to the principal and deliver paperwork to make the school administration aware of the change in masking requirements, stating that the mask requirement was unconstitutional. [Appellant] was asked to put on a mask, but refused. [Appellant] stated that he had an underlying medical condition. [Appellant] conceded that the officers offered to step outside with him to talk about it. [Appellant] refused to leave the building. [Appellant] did not have an appointment so Officer Binda denied him entry to the school and offered to pass along the information he had for the principal. [Appellant] stated that he had a right to be there and the officers could not tell him otherwise. He said that he spoke to an attorney and he had a right to be *inside* the school because he paid taxes. Officer Binda told [Appellant] that he would have to leave the school and he refused, demanding that he speak to a principal. [Appellant] stated that he "was not leaving until he spoke to a principal." [Appellant] began to get very agitated. The vestibule at the high school is not secure and has direct access to the rest of the building. The main hallway where students were walking by was just 30 feet away. Officers viewed [Appellant] as a possible safety threat.

Officer Binda got up and began to escort [Appellant] out of the school, telling him multiple times that he would have to leave the premises. [Appellant] argued and refused to comply. It was clear that [Appellant] was not going to leave the building despite numerous directives to do so. At one point, [Appellant] stated that he would call the [Pennsylvania] State Police and the officers informed him that he would need to do that outside the building.

Officer Blinda then attempted to arrest [Appellant] for defiant trespassing when a scuffle ensued. Specifically, Officer Binda attempted to pull [Appellant] out the door while [Appellant] pushed back and attempted to remain inside. [Appellant] attempted to get back into the school and began wrestling with

- 2 -

the two officers. Officer Binda and Chief Lander had to take [Appellant] to the ground outside the building. [Appellant] pushed the officers' hands away while scuffling with the officers. At one point, Chief Lander noted that [Appellant] "appeared to be bringing his fist back." [Appellant] was handcuffed and informed that he was under arrest at that time. Officer Binda suffered a laceration to his arm while wrestling with [Appellant].

On March 25, 2024, [after a non-jury trial,] the court entered a verdict finding [Appellant] "Guilty" of counts 3, 4, 5, and 6[,] and "Not Guilty" of counts 1 and 2[.][3] [The court] stated its reasoning for the verdict [on the record]. This court sentenced [Appellant] on July 22, 2024, and placed him on one year of probation. [Appellant] filed timely post-sentence motions on July 31, 2024. The Commonwealth filed a response to [the] post-sentence motion on August 23, 2024. A hearing was scheduled for August 27, 2024. Just hours before the hearing, [Appellant] filed a supplemental post-sentence motion raising an additional claim.

Trial Court Opinion (TCO), 8/28/24, at 2-3 (unnumbered; citations omitted; emphasis in original; some capitalization altered).

Appellant's post-sentence motion, including the issue raised in the supplemental motion, was denied on August 28, 2024. He then filed a timely notice of appeal on September 27, 2024. Pursuant to the trial court's order, Appellant filed his concise statement of errors complained of on appeal on October 21, 2024. In response, the trial court informed this Court that the reasons for the denial of Appellant's issues on appeal could be found in the opinion denying Appellant's post-sentence motions. Decree Pursuant to Rule 1925(a), 10/24/24. This appeal is now properly before this Court for disposition.

---

[3] Count 1 charged Appellant with aggravated assault, 18 Pa.C.S. § 2702(a)(3). Count 2 charged Appellant with simple assault, 18 Pa.C.S. § 2701(a)(1).

- 3 -

Appellant puts forth seven issues on appeal, which we reorder for ease of disposition:

1.     Whether the trial court erred by failing to address the lack of legal authority of the arresting officer to arrest Appellant for defiant trespass – an offense graded as at least a misdemeanor of the third degree – when the officer's authority was limited to summary offenses, thereby rendering the arrest, and consequently the resisting arrest charge, unlawful?

2.     Whether the trial court erred in concluding that the evidence was sufficient to sustain Appellant's conviction for defiant trespass under 18 Pa.C.S. § 3503(b), where Appellant was wrongfully informed that his presence on school property was unlawful and [he] reasonably believed he was permitted to remain on the premises?

3.     Whether the trial court erred in concluding that the evidence was sufficient to sustain Appellant's conviction for resisting arrest under 18 Pa.C.S. § 5104, where the arrest was unlawful, Appellant reasonably believed that he was permitted to remain on school property to deliver paperwork, and the Commonwealth failed to prove that Appellant created a substantial risk of bodily injury or required substantial force to overcome his resistance?

4.     Whether the trial court erred in concluding that the evidence was sufficient to sustain Appellant's conviction for disorderly conduct under 18 Pa.C.S. § 5503(a)(1), where the Commonwealth failed to prove that Appellant engaged in fighting, threatening, or tumultuous behavior with [the] intent to cause public inconvenience, annoyance, or alarm?

5.     Whether the trial court erred in concluding that the evidence was sufficient to sustain Appellant's conviction for harassment under 18 Pa.C.S. § 2709(a)(1), where the Commonwealth failed to prove that Appellant acted with the specific intent to harass, annoy, or alarm?

6.     Whether the trial court erred in concluding that the verdicts of guilt for resisting arrest, defiant trespass, disorderly conduct, and harassment were not against the weight of the evidence, where Appellant's good-faith reliance on his medical exemption and the Secretary's Order undermined the Commonwealth's case?

7.     Whether the trial court erred in denying Appellant's post-sentence motions for judgment of acquittal or, in the alternative, for a new trial, where the convictions were unsupported by sufficient evidence and against the weight of the evidence?

Appellant's Brief at 3-5.  We will address Appellant's claims *seriatim*.

*Legal authority to arrest Appellant*

Appellant first maintains that his arrest for defiant trespass was unlawful.  Specifically, Appellant argues, "[t]he arresting officer's lack of legal authority to arrest Appellant for defiant trespass is a critical jurisdictional issue that invalidates both the defiant trespass and resisting arrest charges." Appellant's Brief at 20.  Defiant trespass is a misdemeanor of the third degree when the offender "defies an order to leave personally communicated to him by the owner of the premises or other authorized person."  18 Pa.C.S. § 3503(b)(2).  Appellant argues that the school police were only authorized to arrest persons for summary offenses and, since his offense was graded as a misdemeanor, the arrest was unlawful.

We do not agree.  Notably, the defiant trespass statute under consideration can be deemed **either** a misdemeanor **or** a summary offense under subsection (b)(2), as follows:

> Except as provided in paragraph (1)(v), an offense under this subsection constitutes a misdemeanor of the third degree if the offender defies an order to leave personally communicated to him by the owner of the premises or other authorized person.  An offense under paragraph (1)(v) constitutes a misdemeanor of the first degree.  Otherwise it is a summary offense.

18 Pa.C.S. § 3503(b)(2).  Thus, by the plain language of the defiant trespass statute, this crime could be graded as a misdemeanor of either the first or

third degree, or as a summary offense. Moreover, Pennsylvania law gives school police officers the authority to arrest for summary offenses. General duties of school police officers are enumerated in the Public School Code, as follows:

> **(a) General rule.--**A school police officer appointed under section 1302-C(b) shall possess and exercise all the following powers and duties:
>
>> (1) **To enforce good order in school buildings**, on school buses and on school grounds in the respective school entities….
>>
>> ***
>>
>> (3) If authorized by the court, **to issue summary citations or to detain individuals who are in school buildings, on school buses and on school grounds** in the respective school entities or nonpublic schools until local law enforcement is notified.

24 P.S. § 13-1306-C(a)(1), (3) (emphasis added).

Appellant argues that since he was charged with a misdemeanor, and school police only can arrest for summary charges, his arrest was improper. This argument misses the mark for two reasons. First, the officers clearly had probable cause to arrest Appellant for the lesser-graded offense of summary defiant trespass, even though he was ultimately charged and convicted of defiant trespass as a misdemeanor. Charging decisions in any case are made by prosecutors, not by police officers. *See Commonwealth v. Cosby*, 252 A.3d 1092, 1131 (Pa. 2021) ("As an 'administrator of justice,' *the prosecutor* has the power to decide whether to initiate formal criminal proceedings, to select those criminal charges which will be filed against the accused, to

negotiate plea bargains, to withdraw charges where appropriate, and, ultimately, to prosecute or dismiss charges at trial.") (emphasis added). *See also Commonwealth v. Stipetich*, 652 A.2d 1294, 1295 (Pa. 1995) (stating, "[t]he district attorney's power to prosecute cannot be restricted by the actions of municipal police officers…. While the police exercise, as a practical matter, a certain discretion in deciding whether to make an arrest, … the ultimate discretion to file criminal charges lies in the district attorney.").

The prosecutor's decision to charge Appellant with a misdemeanor instead of a summary offense does not alter the conclusion that the police officer had probable cause to effectuate Appellant's arrest. Moreover, the school police were within their authority to detain someone on school grounds and wait for police to arrive. This was acknowledged by Officer Binda at trial. N.T. Trial, 3/25/24, at 8 ("We are … permitted to make summary arrests. Anything above a summary, we contact the state police."). Officer Binda noted that Appellant interacted with the school police for approximately 37 minutes on the day in question before the state police arrived. *Id.* at 14. Thus, the school police were within their authority to detain Appellant while waiting for the state police to arrive. In any event, the school police officers did not exceed their authority under 24 P.S. § 13-1306-C. Appellant was lawfully arrested.

*Sufficiency claims*

Appellant's next four issues allege that the evidence was insufficient to support each of his convictions. Because a determination of the sufficiency of

the evidence presents a question of law, "our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Williams*, 176 A.3d 298, 305 (Pa. Super. 2017). Further, we analyze this issue under the following guidelines:

> When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. Moreover, this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented.

> *Commonwealth v. Toomer*, 159 A.3d 956, 960–61 (Pa. Super. 2017) (internal citations and quotation marks omitted).

*Commonwealth v. Ewida*, 333 A.3d 1269, 1279 (Pa. Super. 2025).

*Sufficiency of the evidence for defiant trespass*

Appellant contends that his conviction for defiant trespass is not supported by sufficient evidence because the Commonwealth failed to prove that he knowingly defied a lawful order to leave the premises. The statute provides:

**§ 3503. Criminal trespass**

\*\*\*

**(b) Defiant trespasser.--**

- 8 -

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

(i) actual communication to the actor[.]

18 Pa.C.S. § 3503(b)(1)(i). To establish this offense, "the Commonwealth must prove that a defendant (1) entered or remained upon property without a right to do; (2) while knowing that he had no license or privilege to be on the property; and (3) after receiving direct or indirect notice against trespass." ***Commonwealth v. Powanda***, 304 A.3d 1284, 1288 (Pa. Super. 2023).

Appellant claims that he had a "legitimate and lawful purpose of delivering paperwork related to changes in masking policies[, and that he had] a good-faith belief that he was permitted to enter and remain." Appellant's Brief at 14. Specifically, Appellant argues that it was unlawful to remove an individual from school grounds for failing to adhere to masking policies prevalent during the pandemic. Appellant states, without support from legal authorities, that he had a medical exemption from any masking requirement, making it unlawful to ask him to leave the school building.

Appellant's argument entirely misses the point. He was not removed from the school building because he refused to wear a mask; he was removed from the building because he did not have an appointment with any school personnel and thus had no legitimate reason to be on the premises. This case is analogous to ***Commonwealth v. Downing***, 511 A.2d 792 (Pa. 1986). There, the appellant, not a student of Temple University or its law school, obtained a library card in order to access the law school's library during its

normal hours of operation. *Id.* at 793. In December of 1980, access to the library was restricted to law students studying for final exams. *Id.* Downing asked the school's administration for access to the library during this time, but his request was denied. *Id.* Downing then left the building, but returned about a week later, again asking to be admitted into the library "because it was his right." *Id.* When Downing refused to leave, campus police placed him under arrest for defiant trespass and disorderly conduct.

On appeal, Downing argued that the library was open to members of the public at the time he attempted to enter, which is a defense to the defiant trespass charge. However, our Supreme Court held that the law library was only open to non-students if they asked for and obtained a library pass, which was revokable at the law school's pleasure. *Id.* at 795. Downing's permission to be at the library was revoked during exam time. Thus, the defense did not apply. *Id.* Importantly, "[o]nce permission to enter and use the facility is revoked, the privilege or license to use the library ceases." *Id.* Since the law school chose to terminate his privilege to use the library during law school exams, and Downing was fully aware that his license to use the library had been revoked, the conviction for defiant trespass was affirmed. *Id.*

The same result applies here. Appellant may have thought that he had a right to be on the property, but once he was told that he could not remain in the building without an appointment, any right to remain clearly ceased. Appellant was repeatedly told that he could not remain on the site without an appointment, yet he refused to comply with the school police officers' orders

to leave. The evidence is sufficient to support his conviction for defiant trespass. *Id.* *See also Commonwealth v. Conyers*, 357 A.2d 569, 570 (Pa. Super. 1976) (*en banc*) ("The crime of defiant trespass occurs when a person remains in a place where he is not privileged to remain after notice of trespass is given.").

*Sufficiency of the evidence for resisting arrest*

Appellant next challenges his conviction for resisting arrest. The Crimes Code provides:

### § 5104. Resisting arrest or other law enforcement

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S. § 5104. This offense requires proof that a public servant was affecting a lawful arrest or discharging a legal duty other than an arrest, which the defendant intended to prevent. *See Commonwealth v. Karl*, 476 A.2d 908, 911 (Pa. Super. 1984). The Commonwealth does not need to establish actual injury. *Commonwealth v. Lyons*, 555 A.2d 920, 925 (Pa. Super. 1989). Rather, to support a conviction for resisting arrest, the Commonwealth may prove **either** that the defendant's actions created a substantial risk of serious bodily injury **or** that the defendant employed means justifying or requiring substantial force to overcome the resistance. *Id.*

Herein, Appellant initially argues that the evidence was insufficient

under **Commonwealth v. Biagini**, 655 A.2d 492 (Pa. 1995), because "in order to be convicted of resisting arrest, the underlying arrest must be lawful." **Id.** at 497. As noted in his first issue, Appellant maintains that his arrest was unlawful because school authorities are only provided with the authority to arrest for summary offenses, while he was charged with a misdemeanor of the third-degree. However, we determined above that the school police officers were within their power to arrest Appellant. Accordingly, **Biagini** does not require that the resisting arrest conviction be overturned.

Appellant also argues that the evidence was insufficient because the Commonwealth failed to establish that his actions either created a substantial risk of bodily injury[4] or required substantial force to overcome his resistance. In essence, Appellant contends that this was a minor scuffle and that he posed no danger to anyone. Yet, whether Appellant actually inflicted a bodily injury to the officers is irrelevant. "Merely exposing another to the risk of such injury is sufficient to sustain a conviction under Section 5104." **Commonwealth v. Taylor-Dixon**, 322 A.3d 966, 970 (Pa. Super. 2024). Here, Appellant entered the school building and wanted to speak to a principal. N.T. Trial at 8. Officer Binda asked if Appellant had an appointment, and Appellant stated that he did not. **Id.** at 9. Since Appellant had a folder of information that he wanted the principal to have, Officer Binda offered to take it to the principal, but Appellant refused that suggestion. **Id.** Instead, Appellant told the officer that he had

---

[4] Our Crimes Code defines "bodily injury" in this context as the "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301.

spoken to an attorney, knew he had a right to be on the property because he pays taxes, and refused to exit the building. *Id.* Officer Binda told Appellant multiple times that he could not be inside the building without an appointment, but he refused to leave. *Id.* at 10. Officer Binda and Chief Lander then physically escorted Appellant out of the school building, with Appellant wrestling with the officers in an attempt to re-enter. *Id.* at 10-11. During this 'scuffle', the officers and Appellant all fell onto the pavement outside the school doors. *Id.* at 11. Appellant flailed his arms to prevent the officers from handcuffing him. *Id.* at 13-14. Officer Binda was injured during this incident, sustaining a laceration to his forearm. *Id.*

This evidence is clearly sufficient to support Appellant's conviction for resisting arrest. Appellant's belief that he could not be ejected from the school due to his failing to wear a mask does not alter the fact that he was repeatedly told that he was not permitted to be inside the building without an appointment. Critically, however, the officers had to physically wrestle with Appellant to eject him from the building. During the quest to move Appellant outside, the officers had to grapple with Appellant. Appellant's acts caused the parties to fall to the pavement before officers could place him in handcuffs, during which an officer sustained a cut to his forearm. These acts show that Appellant at least exposed the officers to the risk of bodily injury, if not caused it, and that they had to utilize substantial force to restrain him. Viewing the evidence in the light most favorable to the Commonwealth, as we must do under our standard of review, we find the evidence sufficient to support

Appellant's resisting arrest conviction. *See Taylor-Dixon*, *supra* (affirming a conviction for resisting arrest where the defendant pulled away from the officer's touch on his arm and began to run, then, when subdued, he refused to put his hands behind his back, elbowed the officer in the eye and attempted to grab the officer's taser; such acts meant the officers had to use substantial force to overcome his resistance); *Commonwealth v. Becker*, No. 710 MDA 2024, 2025 WL 1625549 (Pa. Super. June 9, 2025) (unpublished memorandum) (finding sufficient evidence for resisting arrest where the defendant refused to enter the police car after being handcuffed, he "tensed up" and "put up a pretty good struggle," including kicking an officer in the head hard enough to make the officer dizzy).[5]

*Sufficiency of the evidence for disorderly conduct*

Appellant's next claim alleges that the evidence was insufficient to support his conviction for disorderly conduct because the Commonwealth failed to prove that he engaged in fighting, threatening, or tumultuous behavior with the intent to cause public inconvenience, annoyance, or alarm. The disorderly conduct statute provides, in pertinent part:

### § 5503. Disorderly conduct

**(a) Offense Defined.--**A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

---

[5] Non-precedential memorandum decisions from the Superior Court filed after May 1, 2019, may be cited for their persuasive value under Pa.R.A.P. 126(b).

- 14 -

(1) engages in fighting or threatening, or in violent or tumultuous behavior[.]

18 Pa.C.S. § 5503(a)(1). The purpose behind Section 5503 is to protect the public from public unruliness leading to tumult or disorder; it is not a "catchall for every act which annoys or disturbs people." *Commonwealth v. Coniker*, 290 A.3d 725, 735 (Pa. Super. 2023). Rather, Section 5503 requires proof that the defendant either intended to cause public inconvenience, annoyance or alarm, *or* recklessly created a risk of causing such. *Id.* Therefore, the Commonwealth can "sustain a disorderly conduct conviction with evidence that the defendant recklessly created a risk of public inconvenience, annoyance, or alarm, even if he lacked the intent to do so." *Id.* "The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder." *Commonwealth v. Hock*, 728 A.2d 943, 946 (Pa. 1999).

Appellant cites *Hock* as support for his contention that a disorderly conduct conviction is not established by conduct that merely annoys others. In *Hock*, the defendant, whom authorities knew had no valid driver's license, was seen driving into her apartment complex. *Id.* at 944. A police officer followed Hock's car into the lot and, as she exited her car, asked to see her license. *Id.* The officer responded to Hock's refusal to comply by stating that she would receive a citation in the mail. *Id.* Hock walked away from the area, saying, in a normal tone of voice, "F*** you, A******." *Id.* No person other than Hock and the officer were present. On appeal, our Supreme Court reversed Hock's disorderly conduct conviction, stating that the offense of

disorderly conduct has a specific purpose — "it is intended to preserve the public peace[,]" that Hock's epithet was not an example of "fighting words" in that the comment did not frighten or alarm the officer, and the fact that no bystanders were present precluded Hock's conviction.

Appellant claims that his presence on school grounds was for a lawful purpose — to deliver his "paperwork" about masking policies — and he never intended to case public inconvenience, annoyance, or alarm. Yet, Appellant did not attend that school, and none of Appellant's children attended the school in question. The school building was currently in operation and full of students; indeed, a student was present in the lobby when this incident occurred. Appellant blames the officers for the incident.

After review, we conclude that the evidence at trial evinces that, at a minimum, Appellant acted recklessly and created a risk of public inconvenience, annoyance, or alarm by his actions. While Appellant may not have intended to create a disturbance by his unannounced appearance at the school, his refusal to exit after being told to do so, and his physical interaction with the officers after being told that he had to leave the building, created a hazardous and/or alarming condition for the parties involved. Accordingly, disorderly conduct was proven in this case. *See Coniker*, *supra* (upholding a conviction for disorderly conduct where the defendant made statements about having non-violent weapons in a courtroom and a lawyer's office, despite the defendant's lack of specific intent to annoy or alarm; such a statement created a hazardous condition that involved danger or a risk of

injury to surrounding citizens and served no legitimate purpose); ***Commonwealth v. McConnell***, 244 A.3d 44 (Pa. Super. 2020) (affirming disorderly conduct conviction for a defendant who installed eight high-powered construction floodlights to illuminate his neighbor's back yard in an attempt to protest the neighbor's backyard pool lighting, his "protest" was unreasonable and offensive and served no legitimate purpose). In sum, Appellant's act of refusing to exit the school building and physically engaging with the police as they tried to get him to leave, when he had no legitimate reason to be on the property, amounts to tumultuous behavior which he should have known would cause public disturbance or alarm. The evidence is sufficient to support Appellant's disorderly conduct conviction.

*Sufficiency of the evidence for harassment*

Appellant also challenges his conviction for harassment. The statute provides:

**§ 2709. Harassment**

**(a) Offense defined.—**A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

(1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]

18 Pa.C.S. § 2709(a)(1). The intent to harass may be inferred from the totality of the circumstances. ***Commonwealth v. Miyares***, 320 A.3d 740, 743 (Pa. Super. 2024).

Appellant maintains on appeal that he did not have the specific intent to harass, annoy, or alarm anyone as required by the statute. Specifically, he argues:

> Appellant's actions were defensive and limited to responding to the officers' conduct. There is no evidence in the record that Appellant acted with any intent to harass, annoy, or alarm the officers or anyone else. His presence on school property was for a lawful and legitimate purpose – delivering paperwork related to masking policies – and his conduct did not exceed the bounds of reasonable resistance to an unwarranted and unlawful removal. Without proof of specific intent, the Commonwealth has failed to meet its burden, and the harassment conviction cannot stand.

Appellant's Brief at 19.

Appellant fails to adhere to our standard of review in that he does not address the facts in the light most favorable to the Commonwealth as the verdict winner. Officer Binda testified at Appellant's trial about the circumstances of his removal from the school entryway:

> [Officer Binda]: At that time I started to escort [Appellant] outside, got him to the door, get him outside. I told him he'd have to leave the premises. He still wanted to argue with us and not leave. At that time I went to place him under arrest for defiant trespassing, and then that's when the scuffle ensued, and we had to take [Appellant] to the ground.
>
> ***
>
> He tried to get back into the school. We grabbed him. Me and him started to tussle. Started wrestling on our feet. At one point my chief had to grab ahold of him because he said he believed that he was going to try to swing at me. When we did, we went down to the ground. Subsequently[, we] put him in handcuffs.

N.T. Trial at 9-11. Officer Binda further explained that after struggling with Appellant, he had a laceration on his forearm. *Id.* at 11. After being asked

- 18 -

specifically what actions Appellant took during this time, the officer stated: "He's pushing on us. We're back and forth. He's trying to get, we believed, to get back inside the school." *Id.* at 13. Moreover, Appellant refused to put his hands behind his back and submit to his arrest, he continued to flail his arms about for a period of time. *Id.* at 13-14. Chief Lander also testified that Appellant was "physically resisting" the officers' efforts to get him outside the building, he was "very combative," including "bringing his fist back" as if to punch Officer Binda, and Appellant's actions required the officers to "wrestle [Appellant] to the ground[.]" *Id.* at 54. According to Chief Lander, Appellant's non-compliance with the officers only intensified when he was told he was under arrest. *Id.* at 55.

Based upon this testimony, the Commonwealth established the elements of harassment beyond a reasonable doubt. We have already determined that Appellant did not have a lawful purpose to be on the school grounds without an appointment. Although he apparently believed that his presence at the school was lawful, once it was determined that Appellant had to leave the school, he became physically combative with the officers, seeming to rear back his fist to punch one of them. Appellant's actions in forcefully pushing against the officers caused all parties to fall to the ground. Officer Binda suffered a laceration as a result of the fall. The evidence is sufficient to prove that Appellant had the intent to harass, annoy, or alarm the officers to support his harassment conviction. *See, e.g.*, *Commonwealth v. Blackham*, 909 A.2d 315 (Pa. Super. 2006) (affirming harassment conviction

where the defendant, in an attempt to stop a fight among children in front of her home, grabbed an 8 year old by his arm and the back of his neck, causing bruises, and forced him to go home despite his screams, thus subjecting the child to physical contact with the intent to harass, annoy, or alarm him). No error occurred here.

*Weight of the evidence*

Despite our finding that the evidence was sufficient to support his convictions, and the fact that Appellant was convicted following a bench trial, Appellant also asserts that the guilty verdicts were contrary to the weight of the evidence provided because Appellant had a good-faith reliance on his medical exemption and the Secretary's Order about masking requirements, which undermined the Commonwealth's case.

Preliminarily, we note that a verdict is against the weight of the evidence "only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." ***Commonwealth v. VanDivner****, 962 A.2d 1170, 1177 (Pa. 2009) (citation omitted). "[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." ***Commonwealth v. Miller***, 172 A.3d 632, 643 (Pa. Super. 2017) (citation omitted). It is well-established that a weight of the evidence claim is addressed to the discretion of the trial court, and "[a] new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." ***Commonwealth v. Widmer****, 744 A.2d 745, 752 (Pa. 2000).

- 20 -

When evaluating the trial court's ruling, we must remember that an abuse of discretion is not merely an error in judgment. *Commonwealth v. Arnold*, 284 A.3d 1262, 1277 (Pa. Super. 2022). Instead, an abuse of discretion is shown when a court's decision is based upon bias, partiality, prejudice, ill-will, manifest unreasonableness, or a misapplication of the law. *Id.* By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record. *Id.*

Thus, the role of the trial court in addressing a weight claim is to determine whether, notwithstanding all the evidence, certain facts are so clearly of greater significance that to ignore them, or to give them equal importance with all other facts from the case, is to deny justice. *Widmer*, 744 A.2d at 752. Even so, because a motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to support the verdict, the trial court is under no obligation to review the evidence in the light most favorable to the verdict winner. *Id.*

Moreover, in reviewing a challenge to the weight of the evidence, the function of an appellate court is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying issue. *VanDivner*, 962 A.2d at 1178. Appellate review "is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable

abuse of discretion." ***Commonwealth v. Diggs***, 949 A.2d 873, 879 (Pa. 2008).

In rejecting Appellant's weight of the evidence claim, the trial court put forth its rationale for the verdict as issued on March 25, 2024:

> The school officers were justified in directing [Appellant] to step outside the building in order to continue the conversation and assess the situation. Whether the conversation between [Appellant] and school officers related to whether [Appellant] was required to wear a mask or whether he was able to speak to [an] administrator without an appointment, or both, the officers were reasonable in directing [Appellant] to step outside to assess the situation and to avoid disruption within the school. The lobby of the high school provided direct access to the main hallway and classrooms, which creates a risk for safety and disruption. Further, a female student was seated just feet from this conversation. For these reasons, one of the officers suggested that an administrator could possibly come outside to speak to [Appellant] about the paperwork he wanted to drop off. This would not have hindered [Appellant]'s efforts in any way. [Appellant], however, refused to leave once he was directed to do so and, instead, wished to stay and protest, which required the officers to forcibly push [Appellant] out of the building, all the while [Appellant] resisting and refusing to leave.
>
> The school officers must rely on their training and experience in making a judgment as to whether a concern for disruption or safety exists in a situation presented to them. The officers had a legitimate interest in protecting the students and staff by asking, and then directing, [Appellant] to step outside to continue the conversation so that they could assess whether [Appellant] posed any threat or whether he had legitimate business with the Hempfield High School that day. If [Appellant] would have simply stepped outside to continue this conversation, it is likely that no physical altercation would have occurred and he could have delivered this paperwork as he sought to do without conflict. [Appellant] felt that he had a right to be inside the high school for the purpose of delivering paperwork to a district administrator. (Of note, the Administration Building is in a totally different building from the high school.) Nonetheless, [Appellant] had no

privilege to remain inside the high school once he was directed to leave and he had no legal right to resist arrest.

TCO at 5-6 (unnumbered).

We discern no abuse of discretion in the court's decision. As the trial court sat as the fact-finder at Appellant's trial, it was tasked with evaluating witness credibility, and was free to believe all, some, or none of the evidence presented. **Commonwealth v. Emler**, 903 A.2d 1273, 1276 (Pa. Super. 2006). Appellant essentially requests that we replace the trial court's credibility determinations with our own; this we cannot do. **See Commonwealth v. Watson**, 292 A.3d 562, 570 (Pa. Super. 2023) ("[I]t is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.") (citation omitted). Appellant will not garner relief on this weight claim.

*Denial of post-trial motions*

Appellant's final claim appears to be a summary of his prior complaints regarding his convictions. Appellant states that the trial court erred in denying his post-sentence motions for judgment of acquittal or, in the alternative, for a new trial, where the convictions were unsupported by sufficient evidence and were against the weight of the evidence. Appellant's Brief at 24. Appellant claims that the trial court "disregard[ed] critical legal and factual issues that undermine the integrity of the convictions." *Id.* Specifically, in this issue, Appellant argues that (1) his arrest was unlawful, (2) there was no

evidence of his wrongful intent, and (3) police officers violated the order related to masking requirements dated August 31, 2021, because Appellant, due to his medical exemption, could not be arrested for not wearing a face mask.

This final claim is merely an amalgamation of Appellant's prior issues. We have already concluded that the school police officers did not lack the legal authority to arrest Appellant. The fact that Appellant mistakenly believed, whether in good faith or not, that he had the "right" to be at the school to give some papers about face masks to the principal, is irrelevant. Once he was informed that he could not enter the school to see the principal without an appointment, Appellant's alleged license to remain in the building expired. Appellant continues to assert that he was arrested because he refused to wear a mask and that he had an exemption from any masking requirement. But Appellant was not arrested for failing to wear a mask, he was arrested because of his behavior which occurred when he refused to leave the school as directed to by police.

Finding no merit to any issues raised by Appellant on appeal, we affirm his convictions.

Judgment of sentence affirmed. Application to expedite denied as moot.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

10/28/2025